T.C. Memo. 2003-217

UNITED STATES TAX COURT

WILLIAM AND PENNY LANDVOGT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12189-02.                     Filed July 22, 2003.

William Landvogt and Penny Landvogt, pro sese.

<u>James E. Schacht</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  On July 3, 2002, respondent issued a notice of final determination disallowing petitioners' claim for abatement of interest with respect to their 1992, 1993, and 1994 taxable years.  Petitioners timely filed a petition under section

6404(h) and Rule 280.[1]  The issue for decision is whether respondent's denial of petitioners' claim for abatement of interest was an abuse of discretion.

                              FINDINGS OF FACT

Some of the facts have been stipulated.  We incorporate the stipulated facts into our findings by this reference. Petitioners resided in Janesville, Wisconsin, at the time of filing the petition.  References to petitioner refer to Penny Landvogt.

In a letter dated June 14, 1994, respondent notified petitioners that their 1992 joint Federal income tax return had been selected for audit.  Respondent later expanded the audit to include petitioners' 1993 and 1994 returns.  During the audit of petitioners' 1992, 1993, and 1994 returns, respondent's examination focused on whether petitioners engaged in their horse-breeding operation for profit pursuant to section 183.

Additionally, in the June 14, 1994, letter, respondent requested a meeting with petitioners in Janesville, Wisconsin, on July 12, 1994, in order to review petitioners' records.  In a reply letter dated June 21, 1994, petitioner requested that respondent's auditor move the audit to Madison, Wisconsin, and enclosed a Form 2848, Power of Attorney and Declaration of

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Representative, designating Nell Ray as petitioners' representative. Pursuant to petitioner's request, respondent transferred the case to the Madison, Wisconsin, office.

After receiving respondent's letter dated September 6, 1994, proposing a conference in Madison, Wisconsin, Ms. Ray called the auditor, Kenneth Gernetzke, and scheduled a conference for October 4, 1994. Subsequently, Mr. Gernetzke canceled the October 4, 1994, conference, rescheduled the conference for October 28, 1994, canceled the October 28, 1994, conference, and then rescheduled the conference for November 2, 1994. Mr. Gernetzke and Ms. Ray attended the November 2, 1994, conference.

In addition to the conference held on November 2, 1994, Ms. Ray and Mr. Gernetzke met to review petitioners' records on November 7, 1994, before petitioners replaced Ms. Ray with a new representative, Michael Ellsworth, on December 3, 1994. At this point, Mr. Ellsworth requested time to "assemble additional information" regarding petitioners' case. Mr. Ellsworth and Mr. Gernetzke eventually discussed the case over the telephone on June 28, 1995.

In a report issued on August 28, 1995, respondent determined that petitioners' horse-breeding operation was not an activity engaged in for profit and disallowed the related losses petitioners claimed on Schedule C, Profit or Loss From Business. The Milwaukee Appeals Office (Appeals) sent a letter to

petitioners dated October 11, 1995, notifying petitioners that Appeals would soon arrange a conference. On January 16, 1996, Appeals returned petitioners' case to the IRS Examination Division "for further development". On February 21, 1996, petitioners signed Form 872, Consent to Extend the Time to Assess Tax, extending the period of limitations for 1992 to June 30, 1997.

On April 10, 1996, Appeals Officer John M. McNamee held telephone conferences with petitioners, Ms. Ray, and Mr. Ellsworth and scheduled an Appeals conference for May 3, 1996, in Milwaukee, Wisconsin. Petitioners later canceled the Appeals conference and apparently did not reschedule. In a letter dated May 23, 1996, Appeals Officer McNamee offered petitioners a settlement.

On May 31, 1996, petitioners again changed representatives, replacing Mr. Ellsworth with David Grams, an attorney. Mr. Grams notified Appeals Officer McNamee of the change via facsimile on June 20, 1996. On or about June 27, 1996, and July 3, 1996, Mr. Grams and Appeals Officer McNamee engaged in telephone conferences but did not arrive at a settlement agreement. Subsequently, on January 31, 1997, Mr. Grams signed Form 872-A, Special Consent to Extend the Time to Assess Tax, extending the period of limitations indefinitely for 1992, 1993, and 1994.

Sometime during 1996 or 1997, Appeals Officer McNamee agreed to provide petitioners with additional time in which to demonstrate that the horse-breeding operation could be profitable. In a letter to petitioners dated April 10, 1998, Appeals Officer McNamee noted that he had not received correspondence from petitioners or their representatives for "awhile" and drew the conclusion that the horse-breeding operation had not met petitioners' profitability projections. Appeals Officer McNamee also gave petitioners 10 days to respond to an enclosed settlement proposal, which petitioners did not accept.

On December 7, 1998, respondent issued a notice of deficiency to petitioners. On February 5, 1999, petitioners filed a petition with this Court contesting the deficiencies. Shortly thereafter, in a letter dated February 15, 1999, Mr. Grams notified Appeals Officer McNamee that he no longer would serve as petitioners' representative.

Petitioners' deficiency case was tried on December 6, 1999, in Milwaukee, Wisconsin. This Court decided in Landvogt v. Commissioner, T.C. Summary Opinion 2000-239, filed November 3, 2000, that petitioners did not engage in their horse-breeding operation for profit in 1992, 1993, and 1994. On November 30, 2000, respondent sent to petitioners Respondent's Computation for

Entry of Decision and a proposed Decision (the Rule 155 computation).

At this time, petitioners hired Donald Bailey, a certified public accountant, to assist them. While working on the Rule 155 computation, Mr. Bailey discovered that respondent's determination failed to include as Schedule A, Itemized Deductions, property taxes formerly claimed by petitioners on their Schedules F, Profit or Loss from Farming. Once informed of the matter, respondent adjusted petitioners' liabilities accordingly.

After several sets of revisions, on February 28, 2001, petitioners sent to respondent the Rule 155 computation and indicated in an accompanying letter that petitioners did not agree to the interest amounts. On March 19, 2001, respondent submitted the Rule 155 computation to this Court,[2] and, on April 13, 2001, this Court entered a decision, upholding the deficiencies.

On July 31, 2001, respondent assessed the deficiencies and assessed interest in the amounts of $4,557.32 for 1992, $4,775.59 for 1993, and $4,144.29 for 1994. Petitioners filed Form 843,

---

[2]On Mar. 23, 2001, this Court issued a Notice of Filing of Computation under Rule 155, advising petitioners to file their notice of objection by Apr. 13, 2001. Petitioners filed Petitioners' Computation for Entry of Decision and Notice of Objection to Respondent's Proposal on Apr. 6, 2001, objecting solely to the amount of interest shown as due.

Claim for Refund and Request for Abatement, on September 10, 2001, requesting that respondent abate the entire amount of interest assessed by respondent on July 31, 2001.[3]  In a letter dated December 20, 2001, respondent disallowed petitioners' claim for interest abatement, which decision petitioners promptly appealed in a letter to respondent dated January 7, 2002.

On July 3, 2002, respondent issued to petitioners a notice of final determination denying their request for abatement of interest for 1992, 1993, and 1994.  In the notice of final determination, respondent found that there were no errors or delays during the period "from April 15, 1993 to the present" relating to the performance of a ministerial act.

On July 19, 2002, petitioners filed a timely, but imperfect, petition for review of respondent's failure to abate interest. In petitioners' amended petition, filed on August 20, 2002, petitioners alleged:  (1) "IRS did not correctly apply the law in regard to assessment of tax"; (2) "There was an unnecessary delay in assessing the tax due to IRS management failures"; and (3) "The original assessment was not correct and not corrected until 2001 by IRS attorney James Schacht".

---

[3]The record indicates that petitioners requested on their Form 843 that respondent abate the deficiencies in their income taxes together with the interest assessed by respondent on July 31, 2001.

OPINION

Under section 6404(e)(1), the Commissioner may abate part or all of an assessment of interest on any deficiency or payment of income tax to the extent that any error or delay in payment is attributable to erroneous or dilatory performance of a ministerial act by an officer or employee of the IRS.[4]  A ministerial act means a procedural or mechanical act that does not involve the exercise of judgment or discretion and occurs during the processing of a taxpayer's case after all the prerequisites to the act, such as conferences and review by supervisors, have taken place.  See <u>Lee v. Commissioner</u>, 113 T.C. 145 (1999); sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).[5]  In contrast, a decision concerning the proper application of Federal tax law, or other applicable Federal or State laws, is not a ministerial act.

_____

[4]Sec. 6404(e) was amended by the Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301(a)(1) and (2), 110 Stat. 1457 (1996), to permit the Commissioner to abate interest with respect to an "unreasonable" error or delay resulting from "managerial" or ministerial acts.  The amendment applies to interest accruing with respect to deficiencies for taxable years beginning after July 30, 1996, and is inapplicable to the instant case.

[5]The final regulations under sec. 6404 were issued on Dec. 18, 1998, and generally apply to interest accruing with respect to deficiencies or payments of tax described in sec. 6212(a) for taxable years beginning after July 30, 1996.  See sec. 301.6404-2(d)(1), Proced. & Admin. Regs.  As a result, sec. 301.6404-2T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987), applies and is effective for interest accruing with respect to deficiencies for those taxable years beginning after Dec. 31, 1978, but before July 30, 1996.  See <u>id.</u> at par. (c).

See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987). The mere passage of time does not establish error or delay in performing a ministerial act. Lee v. Commissioner, supra at 150.

When Congress enacted section 6404(e), Congress did not intend that taxpayers use the provision to routinely avoid the payment of interest. Rather, Congress intended abatement of interest only where failure to do so "would be widely perceived as grossly unfair." H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208. Section 6404(e) affords a taxpayer relief only if no significant aspect of the error or delay can be attributed to the taxpayer. In addition, interest may be abated only after the Commissioner has contacted the taxpayer in writing about the deficiency or payment in question.[6] See sec. 6404(e).

This Court may order an abatement of interest if respondent's failure to abate interest was an abuse of discretion. Sec. 6404(h). In order to prove an abuse of discretion, petitioners must show that respondent exercised discretion arbitrarily, capriciously, or without sound basis in fact or law. Rule 142(a)(1); Woodral v. Commissioner, 112 T.C.

---

[6]In this case, respondent's first contact with petitioners was the June 14, 1994, letter.

19, 23 (1999).  We now consider each of petitioners' arguments in turn.

A.  Respondent's Application of Federal Tax Law

Petitioners contend that respondent did not properly apply "the law in regard to assessment of tax" when assessing petitioners' income tax liabilities and that respondent's failure to abate interest on this basis was an abuse of discretion. Respondent's decisions with respect to the application of Federal tax law, however, are not ministerial acts.  Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).  Accordingly, we reject this argument.

B.  Delays in the Processing of Petitioners' Case

Petitioners also argue that respondent caused unnecessary delays during the processing of their case by twice canceling meetings with Ms. Ray and generally behaving in a dilatory manner.  Respondent contends that to the extent any delays occurred, petitioners were primarily responsible and, regardless, no delays occurred with respect to respondent's performance of ministerial acts.

Even assuming, as petitioners allege, that an excessive amount of time has elapsed since the audit's inception, the mere passage of time does not necessarily establish that respondent delayed in performing ministerial acts.  See Lee v. Commissioner, supra at 150; Denny's Auto Sales, Inc. v. Commissioner, T.C.

Memo. 2002-266. Petitioners have not identified any specific delays attributable to respondent other than the two meeting cancellations. On both occasions when Mr. Gernetzke decided to cancel the meetings with Ms. Ray, he exercised judgment and discretion and, therefore, did not perform ministerial acts. We find no evidence supporting petitioners' contention that respondent's failure to abate interest on this basis was an abuse of discretion.

C. Accuracy of the Amount of Petitioners' Income Tax Liabilities

According to petitioners' third argument, respondent inaccurately classified and evaluated information provided by petitioners during the audit and failed to state the correct amount of petitioners' income tax liabilities "from the very beginning". Petitioners assert that these errors entitled them to an abatement of interest, and, thus, respondent's failure to abate was an abuse of discretion. We disagree for the reasons set forth below.

Contrary to petitioners' assertions, respondent's classification and evaluation of information during an audit requires judgment or discretion and is not a ministerial act. See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987). The remaining allegation made by petitioners focuses on respondent's computation of petitioners' income tax liabilities in the notice of deficiency.

When computing those liabilities, respondent did not allow as itemized deductions the property taxes originally deducted by petitioners on their Schedules F.  Even assuming that this was a ministerial act, for purposes of interest abatement, respondent's error must have contributed to errors or delays in petitioners' payment of the liabilities.  See sec. 6404(e)(1); see also Hawksley v. Commissioner, T.C. Memo. 2000-354; Douponce v. Commissioner, T.C. Memo. 1999-398.

The record indicates that respondent's original disallowance of deductions for the property taxes had no effect on petitioners' payment of their income tax liabilities. Petitioners have never attempted to pay any portion of the liabilities, nor do petitioners contend that they would have paid had they known earlier the correct amount.  Moreover, once petitioners learned of the correct total of their income tax liabilities during discussions of the Rule 155 computation, petitioners still made no payment attempts and even disputed the deficiency amounts on their Form 843.  Accordingly, we conclude that any delays in petitioners' payment of their income tax liabilities were not attributable to any error by respondent in performing a ministerial act and that respondent's denial of petitioners' claim for abatement of interest was not an abuse of discretion.

To reflect the foregoing,

**Decision will be entered**

**for respondent**.
