T.C. Memo. 2006-201

UNITED STATES TAX COURT

ORLANDO J. AND CHRISTINA E. GUERRERO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7046-05.              Filed September 20, 2006.

Orlando J. and Christina E. Guerrero, pro sese.

Frederick J. Lockhart, Jr., for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  On October 19, 2004, respondent issued a notice of final determination disallowing petitioners' claim for abatement of interest accrued and assessed with respect to petitioners' unpaid Federal income tax liability for 2000.

Petitioners timely filed a petition under section 6404(h)[1] contesting respondent's determination.  The only issue for decision is whether respondent's denial of petitioners' claim for abatement of all interest accrued and assessed with respect to their 2000 tax liability was an abuse of discretion.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference.  Petitioners resided in Centennial, Colorado, when the petition in this case was filed.

During 2000 petitioners withdrew a total of $175,450.31 from two retirement plans:  $42,790.81 from a pension plan, and $132,659.50 from a section 401(k) retirement plan, both maintained for the benefit of Mrs. Guerrero.  At the time petitioners withdrew the funds, Mrs. Guerrero had yet to retire, nor was she otherwise eligible to permanently withdraw funds from either plan without incurring a 10-percent additional tax for premature pension plan distributions pursuant to section 72(t). Petitioners did not roll the withdrawn funds into an individual retirement account (IRA) within 60 days of the withdrawal dates.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Instead petitioners used a portion of the withdrawn funds to purchase a new home in Denver, Colorado, and invested the remainder in the stock market.

Petitioners received a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for each of the withdrawals. Both Forms 1099-R listed the amount of the gross distribution in box 1 as the taxable amount in box 2a. The "Total distribution" box in 2b was checked, and the "Taxable amount not determined" box was left blank on both Forms 1099-R.

Petitioners filed a joint individual income tax return for 2000. They reported total pension and annuity distributions of $175,450, but they only reported $89,743 of that amount as taxable income.[2] Petitioners also claimed an IRA deduction of $34,233 and a refund of $11,586. Petitioners testified that they had attached a note to their 2000 return requesting that the Internal Revenue Service (IRS) review their return, correct any reporting errors, and recalculate their tax liability as necessary.[3]

---

[2]Although the parties stipulated that petitioners reported $89,289 as the amount of taxable income, petitioners' tax return shows this amount to be $89,743.

[3]As of the date of trial, respondent had not located the note, and petitioners did not retain a copy of it.

On May 24, 2001, respondent sent a letter to petitioners requesting an explanation of the IRA deduction. In an undated response Mr. Guerrero conceded that the IRA deduction was erroneous, and he asked the IRS to recalculate petitioners' 2000 income tax liability. The IRS did so and sent petitioners a notice dated July 23, 2001, advising them of their corrected income tax liability based on petitioners' concession. According to the notice petitioners had overpaid their corrected income tax liability for 2000 by $737.46, which the IRS refunded to them.

Less than a year later, on April 22, 2002, respondent issued to petitioners a CP-2000 Notice proposing further changes to their 2000 return. As reflected on the notice, respondent increased petitioners' taxable pension and annuity income by $85,706, the amount petitioners had asserted was not taxable on their original 2000 return. The CP-2000 also made a computational adjustment decreasing petitioners' personal exemptions, determined that petitioners owed additional income tax of $39,988, proposed a 10-percent early withdrawal penalty pursuant to section 72(t) of $8,571 and an accuracy-related penalty pursuant to section 6662(a) of $7,998, and determined that petitioners were liable for interest accrued through May 22, 2002, pursuant to section 6601, of $3,735.

On July 15, 2002, respondent issued to petitioners a notice of deficiency for 2000. Petitioners did not petition the Tax

Court in response to the notice of deficiency.  On December 16, 2002, respondent assessed the income tax deficiency, penalties, and interest against petitioners (the unpaid tax liability).

On March 27, 2003, respondent mailed notices of intention to levy to petitioners.  In June 2003, petitioners filed an offer-in-compromise with respect to the unpaid tax liability based on doubt as to liability.  On November 12, 2003, respondent terminated his consideration of petitioners' offer-in-compromise because petitioners did not submit information that had been requested 3 months earlier.

On May 21, 2004, respondent levied upon Mr. Guerrero's wages to satisfy the unpaid tax liability.  That same day Mr. Guerrero met with Mr. Quinones, an IRS collection agent.  Mr. Guerrero gave Mr. Quinones a check for $40,000 in part payment of petitioners' unpaid tax liability in exchange for a release of the levy and a commitment to enter into a payment plan for the unpaid balance.  Mr. Quinones accepted the payment, released the levy, and created a payment plan for petitioners that required them to pay $115 per month.

On June 6, 2004, petitioners requested help from the IRS Taxpayer Advocate's Office with respect to the abatement of assessed penalties and interest.  On July 7, 2004, the taxpayer advocate forwarded a Form 843, Claim for Refund and Request for Abatement, to the IRS on petitioners' behalf.  In the Form 843

petitioners requested that respondent abate the accuracy-related penalty and all interest accrued on their 2000 tax liability. Respondent subsequently abated the accuracy-related penalty and an addition to tax for failure to pay that had been assessed on September 27, 2004, but denied petitioners' request for interest abatement.  The request was denied on the ground that the record did not disclose any unreasonable error or delay in performance of a ministerial or managerial act by an officer or employee of the IRS.  On October 19, 2004, respondent issued a notice of final determination to petitioners.

On April 13, 2005, petitioners' imperfect petition seeking review of respondent's determination not to abate interest under section 6404 was filed.  Because the petition did not meet the requirements of Rule 281(b), we ordered petitioners to file a proper amended petition by June 2, 2005.  On June 1, 2005, petitioners' amended petition was filed.

## OPINION

Under section 6404(e)(1) the Commissioner may abate part or all of an assessment of interest on any deficiency or payment of income tax to the extent that any unreasonable error or delay in payment is attributable to erroneous or dilatory performance of a ministerial or managerial act by an officer or employee of the IRS.  A ministerial act means a procedural or mechanical act that does not involve the exercise of judgment or discretion and

occurs during the processing of a taxpayer's case after all the prerequisites to the act, such as conferences and review by supervisors, have taken place. See Lee v. Commissioner, 113 T.C. 145, 150 (1999); sec. 301.6404-2(b)(2), Proced. & Admin. Regs. The mere passage of time does not establish error or delay in performing a ministerial act. See Cosgriff v. Commissioner, T.C. Memo. 2000-241 (citing Lee v. Commissioner, supra at 150). A managerial act means an administrative act that involves a temporary or permanent loss of records or the exercise of judgment or discretion relating to personnel management during the processing of a taxpayer's case. Sec. 301.6404-2(b)(1), Proced. & Admin. Regs. In contrast, a decision concerning the proper application of Federal tax law, or other applicable Federal or State laws, is not a ministerial or managerial act. See sec. 301.6404-2(b), Proced. & Admin. Regs.

When Congress enacted section 6404(e), it did not intend the provision to be used routinely to avoid payment of interest. Rather, Congress intended abatement of interest only where failure to do so "would be widely perceived as grossly unfair." H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208. Section 6404(e) affords a taxpayer relief only if no significant aspect of the error or delay can be attributed to the taxpayer and only after the Commissioner has contacted the taxpayer in

writing about the deficiency or payment in question.  See H. Rept. 99-426, supra at 844, 1986-3 C.B. (Vol. 2) at 844 ("This provision does not therefore permit the abatement of interest for the period of time between the date the taxpayer files a return and the date the IRS commences an audit, regardless of the length of that time period.").

The Commissioner's authority to abate an assessment of interest involves the exercise of discretion, and we must give due deference to the Commissioner's discretion.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Mailman v. Commissioner, 91 T.C. 1079, 1082 (1988).  In order to prevail petitioner must prove that the Commissioner abused his discretion by exercising it arbitrarily, capriciously, or without sound basis in fact or law.  Woodral v. Commissioner, supra at 23; Mailman v. Commissioner, supra at 1084; see also sec. 6404(h)(1); Rule 142(a).  We have jurisdiction to decide whether the Commissioner abused his discretion under section 6404(h)(1).

At trial petitioners disputed all interest accrued on their 2000 tax liability.  Section 6404(e) requires a direct link between the error or delay and the specific time period during which interest accrued.  See Braun v. Commissioner, T.C. Memo. 2005-221.  A request demanding abatement of all interest charged does not satisfy the required link; it merely represents a request for exemption from interest.  Id.; see also Donovan v.

Commissioner, T.C. Memo. 2000-220.  Such a broad claim extends beyond the intention of the statute.  See H. Rept. 99-426, supra at 844, 1986-3 C.B. (Vol. 2) at 844; S. Rept. 99-313, supra at 208, 1986-3 C.B. (Vol. 3) at 208.  Respondent's failure to abate interest based on petitioners' blanket request was not an abuse of discretion.  See Donovan v. Commissioner, supra.

In their posttrial memorandum petitioners argue that interest should be abated because they requested the Secretary to recalculate their income tax liability for 2000, and the Secretary had all required Forms 1099 and other information to do so accurately and promptly.  Petitioners contend that the act of processing their 2000 return accurately was a ministerial act.  We disagree.  The processing and evaluation of their income tax return required the application of Federal tax laws, which was not a ministerial or managerial act.

In this case respondent did not learn that petitioners' IRA deduction was erroneous until after he had contacted petitioners and requested information concerning the deduction.  After petitioners conceded the deduction was erroneous, respondent promptly recalculated petitioners' 2000 income tax liability and notified them of the results.  Less than 1 year later, respondent again contacted petitioners regarding their failure to treat the entire amount of the retirement distributions as taxable income.  Again respondent acted promptly to determine petitioners' correct

income tax liability, and he issued a notice of deficiency reflecting his determination before the period of limitations for assessment provided by the Internal Revenue Code had expired. Each of these adjustments required respondent to apply Federal income tax law to facts that petitioners provided. None of respondent's adjustments to petitioners' 2000 return constituted a ministerial or managerial act within the meaning of section 6404(e).

In this case it was petitioners' own mistakes that caused the delay in correctly calculating petitioners' 2000 income tax liability. Section 6404(e) permits an abatement of interest only when the interest is not attributable to error or delay by the taxpayers. Moreover, most of petitioners' argument is directed to respondent's perceived delay in identifying petitioners' mistakes and correcting them. However, section 6404(e) does not authorize the abatement of interest from the due date of the return until the Commissioner contacts a taxpayer in writing with respect to the deficiency. In this case respondent did not contact petitioner in writing with respect to the 2000 income tax deficiency until April 22, 2002. Respondent's failure to abate interest from the date petitioners' return was filed to April 22, 2002, was not, and under section 6404(e) cannot be, an abuse of discretion. See sec. 6404(e); Donovan v. Commissioner, supra; H. Rept. 99-246, supra at 844, 1986-3 C.B. (Vol. 2) at 844.

Petitioners also argue that their incorrect reporting was attributable, in part, to erroneous advice they received from respondent's agent.[4]  However, such advice, whether accurate or not, contains the legal or administrative judgment of the person giving the advice and is not a ministerial or managerial act. See Crawford v. Commissioner, T.C. Memo. 2002-10; sec. 301.6404-2(b), Proced. & Admin. Regs.  Respondent did not abuse his discretion by refusing to abate interest arguably attributable to his agent's erroneous advice.

Petitioners do not persuade us that respondent abused his discretion in refusing to abate interest after April 22, 2002, when respondent sent petitioners his proposed changes to their 2000 return.  Petitioners simply argue that had respondent acted more promptly in assessing their correct 2000 income tax liability, petitioners would have paid it earlier, and, as a result, they would not have incurred interest charges.

Abatement of interest is not appropriate simply because a taxpayer might have made a tax payment sooner.  See Braun v. Commissioner, T.C. Memo. 2005-221.  Respondent had determined

---

[4]Petitioners claim that one of respondent's employees informed petitioners over the telephone that they would not incur the 10-percent early withdrawal penalty pursuant to sec. 72(t) on the funds used to build their house, nor would they have to report those funds as taxable income.  However, the record suggests that petitioners may not have given the employee complete and accurate factual information regarding the house they were building or the source of the funds.

that petitioners owed approximately $40,000 of additional tax as a result of their underreporting of Mrs. Guerrero's retirement plan distributions.  Petitioners presented no evidence that they would have paid their additional tax liability sooner if respondent had notified them of it earlier.  In fact the record demonstrates the contrary.  Petitioners received a notice of deficiency dated July 15, 2002, but they did not make any substantial payment toward the deficiency until respondent levied upon Mr. Guerrero's wages in May 2004.

A careful review of the record in this case fails to disclose any erroneous or dilatory performance of a ministerial or managerial act by an officer or employee of respondent with respect to petitioners' 2000 return.  Consequently, we hold that respondent's determination denying petitioners' claim for abatement of all interest accrued with respect to petitioners' 2000 income tax deficiency was not an abuse of discretion.

To reflect all of the above,

<u>Decision will be entered</u>

<u>for respondent</u>.