T.C. Memo. 2019-56

UNITED STATES TAX COURT

LESLIE RUPPERT KREHNBRINK AND ROBERT GRIFT KREHNBRINK,
Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20892-13L.                    Filed May 22, 2019.

Leslie Ruppert Krehnbrink and Robert Grift Krehnbrink, pro sese.

Jonathan E. Behrens and Richard J. Hassebrock, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  This case was commenced under section 6330(d) in response to a notice of determination concerning collection action sustaining a lien and a proposed levy with respect to petitioners' Federal income tax liabilities for 1999 through 2006, all of which were assessed following decisions entered by this

[*2] Court in prior proceedings. In the hearing conducted under section 6330, petitioners sought interest abatement under section 6404(h) and now seek review of the denial of interest abatement. The issue for decision is whether there was an abuse of discretion in sustaining the collection actions as to all of the subject years and in declining to abate interest on the deficiencies for 2001 through 2006 determined in the prior proceedings. All section references are to the Internal Revenue Code in effect for the periods in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Most of the facts have been stipulated and appear in the administrative record of proceedings before the Internal Revenue Service (IRS) Office of Appeals (Appeals). Petitioners resided in Ohio when they filed their petition.

The Examination

On October 31, 2006, Revenue Agent Joseph S. Estes (RA Estes) mailed to Leslie Ruppert Krehnbrink (petitioner L) a letter stating that the IRS had no record of receiving her Federal income tax returns for 1999 through 2005. That letter was returned undelivered and marked "attempted not known". A second letter to the same name but a different address was sent on January 18, 2007.

**[*3]**  RA Estes established initial contact with petitioner L on August 14, 2007, at the address to which the January 18, 2007, letter was sent.  (That address remained petitioners' address through the time of trial.)  He learned that petitioner L's maiden name was Ruppert but for some time her married name had been Krehnbrink.  Petitioner L acknowledged that returns had not been filed for the years under examination but stated that her husband, Robert Krehnbrink (petitioner R), was gathering information to file returns.  She agreed to an interview on August 31, 2007.  On August 16, 2007, RA Estes expanded the scope of his examination to include 2006.  He mailed to petitioner L a letter confirming an appointment for the agreed date of August 31, 2007, and enclosed a Form 4564, Information Document Request (IDR), requesting tax returns, bank statements, and supporting documents for the eight years under examination.

On August 28, 2007, an attorney for petitioner L called RA Estes and canceled the meeting scheduled for August 31, 2007.  On August 30, 2007, petitioner L's attorney assured RA Estes that the returns for 2001 through 2006 would be filed.  RA Estes advised the attorney that he expected to receive the returns no later than the week of September 17, 2007.  RA Estes sent the attorney records of the sources and amounts of petitioner L's income known to the IRS for 2001.

**[*4]** On November 21, 2007, RA Estes received petitioners' joint Federal income tax returns for 2001 through 2006 (delinquent returns). On December 11, 2007, RA Estes mailed petitioners' attorney an IDR asking for information supporting the entries on the delinquent returns and explanations of statements that had been made by petitioner L during the prior interview. The IDR suggested an appointment at petitioners' residence for January 10, 2008, noting that the returns for 2001 through 2006 had claimed deductions for business use of the home. On January 4, 2008, petitioner R left a voice mail message for RA Estes that an appointment on January 10, 2008, would not work because petitioners were trying to work out arrangements for representation. A response to the December 11, 2007, IDR sent by petitioners' attorney was dated March 13, 2008. That response stated that some of the entries on the delinquent returns were based on records provided by the IRS, that petitioners were seeking additional documentation, and that petitioner R was not employed during the years of the returns.

On February 26, 2008, RA Estes sent petitioners a summons for records pertaining to the period December 1, 2000, through January 31, 2007. The summons required petitioners to appear before RA Estes at his office on March 27, 2008. RA Estes began to conduct third-party research with respect to the representations made in petitioners' attorney's March 13, 2008, letter. On March

[*5] 26, 2008, petitioners' attorney advised RA Estes that petitioner L would not be able to attend the summons interview and requested that it be rescheduled to April 10 or 11, 2008. The interview was rescheduled for April 10, 2008, but petitioners did not appear.

Petitioner R attended an interview before RA Estes on or about May 1, 2008. On November 7, 2008, RA Estes mailed petitioners' attorney a third IDR. The attorney responded on November 14, 2008, that she did not believe that petitioners would comply with that IDR. During the next several months RA Estes prepared an analysis that included consideration of the civil fraud penalty and petitioners' tax liabilities. On February 3, 2009, RA Estes sent his results to his manager for review and approval.

Agreed Liabilities

On June 8, 2009, notices of deficiency for 2001 through 2006 were sent to petitioners. The notices determined additions to tax for delinquency of the returns and an accuracy-related penalty for each year. The notices also stated that interest would accrue on the deficiencies from the due dates of the returns until paid. The notices did not determine any civil fraud penalties.

On September 8, 2009, petitioners filed a Tax Court petition, docketed as No. 21277-09, disputing the determinations in the notices of deficiency. On May

**[*6]** 8, 2012, following agreement by respondent's counsel to modify certain adjustments, a stipulated decision was entered. The stipulation of the parties was incorporated into the decision, including their agreement that "interest will accrue and be assessed as provided by law on the deficiencies, penalties, and additions to tax due from petitioners." On August 27, 2012, the amounts set forth in the decision and the self-reported liabilities on the delinquent returns for 2001 through 2006 were assessed.

On February 25, 2009, a statutory notice of deficiency was sent to petitioner L for 1999 and 2000. On May 13, 2009, she filed a Tax Court petition, docketed as No. 11555-09, disputing the determinations in that notice of deficiency. On May 11, 2012, a stipulated decision was entered in that case. The stipulated liabilities for 1999 and 2000 were assessed on August 27, 2012.

Collection Proceedings

On November 9, 2012, a Final Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice) was sent to petitioner L with respect to outstanding liabilities totaling $478,373.54 for 1999 through 2006. On the same date a levy notice was sent to petitioner R with respect to outstanding liabilities totaling $404,995.79 for 2001 through 2006. Notices of Federal tax lien (NFTL) were filed on November 28, 2012, with respect to petitioners' outstanding

[*7] liabilities. On December 7, 2012, petitioners submitted Forms 12153, Request for a Collection Due Process or Equivalent Hearing, with attachments. Among the attachments were Forms 843, Claim for Refund and Request for Abatement, for each year. On the Forms 843, petitioners stated that the liabilities were inconsistent with the decisions of the Tax Court and that interest was assessed as a result of IRS error and delay. The amounts disputed for 2001 through 2006, respectively, were $17,122.14, $8,862.62, $11,109.02, $14,600.03, $14,649.33, and $8,495.67. (Petitioners now request abatement of interest estimated at $126,952 from June 2008 through present day.)

On the Form 12153 submitted for tax years 2001 through 2006, petitioners checked the boxes requesting discharge of property from the Federal tax liens and withdrawal of the NFTLs. On the attachments to both Forms 12153, petitioners requested consideration of the Forms 843, argued that the proposed levies would cause economic hardship, and requested that Appeals consider petitioners' eligibility for an installment agreement or offer-in-compromise. Appeals Settlement Officer Veronica Brooks (SO Brooks) was assigned to conduct petitioners' collection due process (CDP) hearing.

By letter dated February 6, 2013, petitioners requested a face-to-face hearing. On February 25, 2013, SO Brooks mailed petitioners letters that

[*8] scheduled a face-to-face hearing on April 8, 2013, and requested that petitioners provide to SO Brooks within 14 days of the date of the letter:  (1) verification of all household income for the tax year 2012, (2) copies of bank statements for the past three months, and (3) a current profit and loss statement for petitioners' business reported on Schedule C, Profit or Loss From Business. Petitioners and SO Brooks exchanged correspondence that resulted in the face-to-face conference's being postponed at petitioners' request.

The face-to-face conference was held on May 9, 2013, between petitioner R and SO Brooks. At the conference, petitioner R inquired about the Forms 843 and was told that they would not be considered during the CDP hearing.  Petitioner R produced during the conference spreadsheets with revenue and expense detail for petitioner L's business, copies of bank statements for the period January through March 2013, and other documents to establish petitioners' compliance with filing and estimated tax requirements.  Later that day, petitioner R faxed to SO Brooks copies of the 2012 Forms 1099-MISC, Miscellaneous Income, issued to petitioner L.  The 2012 Forms 1099-MISC reported nonemployee compensation received by petitioner L totaling $188,939, or $15,744 per month.

Petitioners did not submit a Form 656, Offer in Compromise, during the CDP hearing.  They did not present during the CDP hearing any support for their

[*9] contention that the NFTLs or proposed levies would terminate their future income. They did not propose terms for an installment agreement during the CDP hearing.

After reviewing the documents received May 9, 2013, the Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals with attachments, SO Brooks determined that petitioners could elect either an installment agreement with a term of 60 months and a monthly payment of $5,282 or an installment agreement with a term of 72 months and a monthly payment of $4,401. SO Brooks conveyed the terms of these proposed installment agreements to petitioner R by telephone on June 21, 2013. Petitioner R declined both and asked that SO Brooks issue a notice of determination.

On August 12, 2013, Appeals sent to petitioners notices of determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notices of determination) with respect to the income tax liabilities. Pursuant to the notices of determination and attachments thereto, Appeals sustained the filing of the NFTLs and the proposed levies to collect the income tax liabilities.

The notice of determination sent to petitioner L for 1999 and 2000 acknowledged the Form 843 for that year and included a paragraph rejecting petitioners' contentions for those years. SO Brooks erroneously did not consider

[*10] or address during the hearing petitioners' Form 843 claims for abatement of interest for 2001 through 2006.

Court Proceedings

The petition in this case was filed September 9, 2013. Petitioners raised a variety of challenges, including arguments that the assessments were inconsistent with the Tax Court's decisions, that interest was assessed as a result of IRS' error or delay, that the lien or levy would cause economic hardship and would "terminate future income", and that petitioners wished to discuss alternatives to collection.

On August 11, 2014, petitioners filed a petition in this Court that was docketed as No. 18677-14. The petition in that case challenged a Full Disallowance - Final Determination in response to petitioners' request for abatement of interest for 1999 and 2000. The stated reason for the denial was: "There was no unreasonable error or delay relating to the performance of a ministerial or managerial act in processing the examination of your return."

This case and the case at docket No. 18677-14 were set for trial on September 21, 2015. On July 13, 2015, on respondent's motion, the cases were remanded to Appeals and continued. On March 30, 2016, respondent moved for summary judgment in docket No. 18677-14. After several intervening procedural

**[\*11]** steps, the consolidated cases were severed on June 7, 2017. On that date, respondent's motion for summary judgment was granted and an order of dismissal and decision was entered in docket No. 18677-14. The Court explained:

> A review of the record in this case reveals that petitioners have not shown that there is any genuine dispute of material fact. Furthermore, the undisputed facts do not establish that respondent abused his discretion, as petitioners have failed to identify any unreasonable error or delay by respondent in performing a ministerial or managerial act. Petitioners appear to believe that they are entitled to abatement of interest in this case solely on the basis that the amount of the tax liability that the parties agreed upon in the stipulated decision which concluded the deficiency case, discussed above, differed substantially from the amount of the tax liability stated in the notice of deficiency issued for tax years 1999 and 2000. However, the mere fact that the two amounts differed, even substantially, does not constitute an unreasonable error or delay by respondent in performing a ministerial or managerial act. Landvogt v. Commissioner, T.C. Memo. 2003-217 (a decision concerning the proper application of Federal tax law is not a ministerial act, nor is respondent's classification and evaluation of information during an audit because such requires judgment or discretion); see also Treas. Reg. 301.6404-2(b)(1) (a decision concerning the proper application of Federal tax law or other Federal or State law is not a managerial act). Furthermore, petitioners did not reasonably cooperate during respondent's examination of tax years 1999 and 2000. Respondent asserts, and petitioners have not disputed, that they refused to provide information requested by respondent and persisted in failing to file income tax returns for 1999 and 2000. As a result, petitioners themselves contributed significantly to any errors that the notice of deficiency for 1999 and 2000 might have contained. Under section 6404(e)(1), therefore, the undisputed facts fail to show that petitioners are entitled to abatement of interest for 1999 and 2000.

**[\*12]** On August 10, 2018, the Court of Appeals for the Sixth Circuit affirmed the

dismissal and decision in docket No. 18677-14. The Court of Appeals held:

> The Krehnbrinks dispute the Tax Court's finding that they did
> not fully cooperate with the audit, and they again rely on the auditor's
> initial erroneous deficiency calculation to support their claim for
> abatement. But as the Tax Court correctly held, the auditor's
> determination of the Krehnbrinks' tax deficiency involved judgments
> concerning the application of federal tax law, and therefore was not a
> ministerial or managerial act. See 26 C.F.R. § 301.6404-2(c),
> Example 12 ("Interpreting complex provisions of federal tax law is
> neither a ministerial nor a managerial act. Consequently, interest
> attributable to an error or delay arising from giving the taxpayer an
> incorrect amount due to satisfy the taxpayer's income tax liability . . .
> cannot be abated under paragraph (a) of this section."). Therefore,
> even if the Tax Court erroneously concluded that the Krehnbrinks did
> not fully cooperate with the audit, they are not entitled to abatement
> because they have not identified an error or delay in the performance
> of a ministerial act. See Mekulsia, 389 F.3d at 604.

By notice served April 17, 2018, this case was set for trial in Cincinnati,

Ohio, on September 17, 2018. On July 19, 2018, the last day for filing under the

Court's Rules, respondent filed a motion for summary judgment and on July 26,

2018, respondent filed a motion for continuance. The motion for continuance was

denied. Petitioners sought an extension of time to respond to the motion for

summary judgment and moved for a continuance. On August 6, 2018, the Court

denied the motion for summary judgment because it would have delayed the trial

**[\*13]** and also denied petitioners' requested extension of time and continuance. Trial proceeded on September 20, 2018, and posttrial briefs were ordered.

OPINION

For the most part, petitioners' arguments in this case are the same as those previously rejected by the Court's order of dismissal and decision granting summary judgment in the case at docket No. 18677-14 and by the Court of Appeals order affirming our decision. But before repeating and applying the rulings in that case it is worth repeating certain facts. Petitioners failed to file timely Federal tax returns for at least eight years, from 1999 through 2006. They delayed responding to or declined requests for information, postponing or canceling appointments from August 2007 to the entry of stipulated decisions in May 2012. While seeking abatement of interest, to the time of trial in 2018 petitioners failed to make any voluntary payments on the liabilities which they stipulated in 2012. While they claim that the assessments based on their stipulated liabilities are not consistent with the stipulated decisions, they have not shown any error in the computations of the outstanding balances.

Presentation of this case for decision was delayed by the remand, by various continuances, by motions, and by the infrequency of trial sessions in Cincinnati. Some of the delays may be attributed to each party, and some are attributable to

**[*14]** the usual delays incident to litigation. The passage of time during litigation does not establish error or delay in the performance of a ministerial or managerial act. See, e.g., Lee v. Commissioner, 113 T. C. 145, 150 (1999).

When they received the administrative record for this case before trial, petitioners learned that the examiner's log of contacts with them omitted reference to one meeting. There is no apparent connection between that omission and any delay in the examination. Petitioners again rely on the difference between the amounts determined in the notices of deficiency and the stipulated decisions as establishing errors by RA Estes. They rely on respondent's motion for remand as establishing errors by SO Brooks.

In their posttrial brief, petitioners fail to cite any portion of the record to support their summary of the facts. See Rule 151(e)(3). Some of their assertions are not supported by anything in the record, and others are contrary to the record. For example, petitioner R acknowledged at trial that the only payments made on petitioners' outstanding liabilities were involuntary. In their brief they claim to have made payments but have not identified any that were not involuntary. They have not shown, and we do not believe, that they would have made payments any sooner if the errors that they cite had not occurred. Thus they fail one of the prerequisites to abatement of interest. See Guerrero v. Commissioner, T.C. Memo.

**[*15]** 2006-201, 2006 Tax Ct. Memo LEXIS 205, at *13-*14; <u>Landvogt v. Commissioner</u>, T.C. Memo. 2003-217, 2003 Tax Ct. Memo LEXIS 217, at *12.

Petitioners seem to base their claims that the assessed amounts are inconsistent with the determined deficiencies on an assertion that the decision leading to the assessments did not determine interest. As is standard in such decisions, the decision incorporated petitioners' stipulation that interest would accrue and be assessed as provided by law. They have shown no error in the computations of interest reflected in their accounts.

Petitioners ignore their longstanding failure to file returns, their cancellation and postponement of appointments, and their withholding or late production of documents in arguing that they cooperated with the examination and the Appeals process. Reconstructing income for eight years is inherently difficult. Petitioners requested and received records of the IRS reflecting their receipt of income before submitting the delinquent returns. A reasonable inference is that they did not keep their own records or, perhaps, would report only income known to the IRS. We conclude on the record that they were dilatory and uncooperative to the extent that significant aspects of any error or delay can be attributed to them. This conclusion precludes their entitlement to abatement of interest. <u>See</u> sec. 6404(e)(1).

**[\*16]** The foregoing factors persuade us that petitioners are not entitled to interest abatement regardless of how errors in the examination or Appeals process are characterized. Petitioners merely repeat "ministerial and managerial" in referring to errors by RA Estes and SO Brooks without regard to the decision of this Court in docket No. 18677-14, affirmed by the Court of Appeals. Specifically, the courts stated that the errors complained of involved proper application of Federal tax law or items requiring judgment or discretion are not ministerial or managerial. See Landvogt v. Commissioner, T.C. Memo. 2003-217; sec. 301.6404-2(b)(1), Proced. & Admin. Regs. Petitioners rely on the very same incidences here, and our holding that the errors were not ministerial or managerial is the same.

Petitioners speculated that another error occurred in that SO Brooks did not verify that written supervisory approval was obtained as required by section 6751(b). See Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016). The record does not support that claim and, in any event, no delay would be attributable to any such failure. Moreover, given the long history recited in Graev, any such failure would be an error involving application of Federal tax law and not cognizable as ministerial or managerial.

**[*17]** Petitioners have not challenged the balancing activities of SO Brooks required by section 6330(c)(1) and (3). They did not submit an offer-in-compromise or an installment payment schedule and rejected those proposed by SO Brooks. Because we conclude that petitioners are not entitled to abatement of interest for any period and raised no other challenges to the determination, we cannot conclude that the Appeals determination involved an abuse of discretion. We have considered the other arguments of the parties. They are either lacking in merit or unnecessary to address.

<u>Decision will be entered for</u>

<u>respondent</u>.