T.C. Memo. 2005-221

UNITED STATES TAX COURT

MICHAEL W. BRAUN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16413-03.              Filed September 21, 2005.

Michael W. Braun, pro se.

<u>Dennis R. Onnen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined that petitioner was
not entitled to an abatement of interest under section 6404(e)[1]

---

[1]All section references are to the Internal Revenue Code in
effect for the years at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure, unless otherwise
indicated.

with respect to the Brauns'[2] joint Federal income tax returns for 1994 and 1997.  The sole issue for decision is whether respondent abused his discretion in failing to abate interest.  We hold that respondent did not abuse his discretion.

FINDINGS OF FACT

The parties have stipulated some of the facts, which are incorporated in our findings by this reference.  Petitioner resided in Grandview, Missouri, when he filed the petition.

The Brauns' 1994 and 1997 Income Tax Returns

Petitioner and his wife had consistently filed their income tax returns and paid their income tax liabilities timely until 1994, when a series of events caused the Brauns to file returns and pay their income tax liabilities late.  These events began when petitioner lost his job in 1994.  Shortly thereafter, petitioner was shot through the throat, lung, and shoulder by an intruder burglarizing his home in early 1995.  Petitioner survived, but the effect on his employability and finances was devastating.  After spending 8 days on life support, petitioner spent another 17 days in the hospital and approximately 7 more months bedridden, undergoing surgeries, and receiving extensive therapy.

---

[2]The Brauns are petitioner and his wife, Tammy J. Braun, who filed joint Federal income tax returns.  Because petitioner filed the petition is his name only, we refer to the Brauns when describing their joint tax liabilities and actions they took together.  References to petitioner are to petitioner individually.

Petitioner finally began to get his life back on track about 3 years later, and in 1998 he filed the Brauns' tax returns for 1994 through 1997 and submitted an offer in compromise to respondent for the outstanding tax liabilities and interest.[3]

Specifically, petitioner filed the Brauns' prior 4 years of income tax returns on September 13, 1998. The Brauns were due refunds for 1995 and 1996. After crediting the refunds against their 1994 tax liability, the Brauns had tax liabilities left outstanding for 1994 and 1997. Respondent previously sent the Brauns a deficiency notice for 1994. When the Brauns failed to respond, respondent assessed an amount the Internal Revenue Service (IRS) determined to be the Brauns' 1994 tax liability and $2,028.31 in interest.[4]

Respondent assessed additional tax and interest after the Brauns filed their income tax return for 1994.[5] Respondent also assessed the tax reported on their income tax return for 1997

---

[3]The Brauns were due refunds for 1995 and 1996 that respondent applied against their 1994 tax liability. Income tax credits totaling $2,294.05 from 1995 and 1996 were applied to the Brauns' 1994 account, and respondent abated $197.21 of interest. Income tax credits totaling $2,832.47 from 1999-2002 were also applied to the Brauns' 1994 account.

[4]The amount assessed for 1994 included a $7,057 income tax deficiency, a $1,220.75 addition to tax under sec. 6651(a)(1) for failure to file timely, and a $239.13 addition to tax under sec. 6654 for failure to pay estimated tax.

[5]The late-filed return for 1994 reflected a $12,311.60 tax liability that resulted in an additional assessment for 1994 of $5,254 in tax and $1,219.06 in interest.

plus interest.[6]  In addition, respondent made assessments of $800 for 1994 and $74.10 for 1997 against the Brauns in August 2003.

Offer in Compromise

Petitioner submitted his initial offer in compromise in the form of a letter summarizing his job loss and physical injury. In response, respondent withdrew penalties against the Brauns for 1994, except the estimated tax addition, and sent petitioner proper forms for filing an offer in compromise.  Respondent sent to petitioner a Form 433-F, Collection Information Statement, and Form 656, Offer In Compromise.  Petitioner completed and returned these forms to respondent, offering to compromise the Brauns' tax liability for $2,500.  At that time, the Brauns' tax liabilities totaled approximately $11,000, including interest.

Respondent later requested a longer information statement from petitioner, this time a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals.[7] Petitioner refused to submit the longer Form 433-A, insisting instead that respondent use the shorter Form 433-F, which he had already submitted.

---

[6]The late-filed return for 1997 reflected a $4,317 tax liability.

[7]Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, is six pages compared to the one-page Form 433-F, Collection Information Statement, respondent initially sent the Brauns.

Because the Brauns had individual retirement accounts totaling more than $46,000 but offered to pay approximately $2,500 of an $11,000 tax liability, including interest, respondent determined that petitioner's offer was too low. Respondent rejected petitioner's offer in compromise on collectibility and liability grounds. Respondent relied upon the shorter Form 433-F, that petitioner had originally submitted, in making his determination. Petitioner appealed.

Appeal Offer in Compromise Determination

The Appeals Office (Appeals) scheduled a conference with petitioner to discuss his offer in compromise. Petitioner canceled the meeting but increased his offer in compromise from $2,500 to $3,600.

Appeals requested another conference with petitioner. Petitioner objected to the conference because he mistrusted respondent. Petitioner stated that he preferred all communication be in the form of written correspondence. Petitioner also charged respondent with making false statements, corresponding for the sole purpose of "finding funds" rather than to consider his offer, retaliating against him because he had exposed respondent's "gestapo" tactics, and discriminating against him on account of sex, race, age, and marital status.

Respondent sought to reassure petitioner by letter that Appeals was independent of other offices in the IRS. Respondent explained that petitioner could openly discuss matters with Appeals, that he had the right to legal representation at a conference, and/or he could be accompanied by another person. Again, petitioner refused respondent's gesture and insisted upon a written record of communication.

Petitioner raised his offer in compromise again, this time to the full amount of the Brauns' tax liabilities for 1994 and 1997, excluding interest.[8] Petitioner's amended offer also required that respondent admit to having committed errors.

Investment Account Information

During consideration of petitioner's offers, Appeals requested the "current value" of petitioner's 401(k) account.[9] Twice petitioner sent respondent the current "vested" amount rather than the "current value." Respondent's Taxpayer Advocate (the TA) later explained the distinction to petitioner. The TA also told petitioner that respondent should have requested "all"

_____

[8]At that time, petitioner computed his full tax liability, less interest, at $5,180.12. Petitioner later stated that his full tax liability, less interest, was $4,586.27. Each time that petitioner amended his offer in compromise, he did so by letter to respondent, rather than by submitting an updated Form 656, Offer in Compromise.

[9]On Mar. 25, 2002, petitioner replied that the current vested balance in his 401(k) account was $1,671.59 as of Dec. 31, 2001. Later, petitioner reported that the current vested balance in his 401(k) account was $4,384.54 as of Oct. 30, 2002.

information regarding the Brauns' pension plans and investment accounts rather than only petitioner's 401(k) information.[10]  The TA relayed this to Appeals, and Appeals mailed petitioner an amended letter requesting the correct information.  Petitioner reported approximately $46,000 in investments as individual retirement accounts.[11]

After reconsideration, Appeals affirmed respondent's initial determination rejecting petitioner's offer in compromise for $2,500.  Appeals also rejected petitioner's final offer to pay the Brauns' full tax liabilities for 1994 and 1997, excluding interest.

Claim for Abatement

Because petitioner's last offer in compromise amounted to 100 percent of the Brauns' tax liability, petitioner's claim essentially took the form of an interest abatement claim. Respondent therefore requested that petitioner submit a Form 843, Claim for Refund and Request for Abatement, in connection with his offer in compromise.  In the interest abatement request, petitioner alleged errors and undue delay in respondent's

---

[10]The Brauns had previously submitted investment account information in their Form 433-F on July 22, 1999.

[11]The Brauns reported $46,468 in individual retirement accounts as of Jan. 6, 2003.  The Brauns reported $44,609 as of July 22, 1999.

consideration of his offer in compromise. Respondent denied petitioner's interest abatement claim.[12]

The entire course of events, from petitioner's first request to compromise their tax liability through respondent's final denial of his claim, took more than 3 years.

Notice of Intent To Levy and Payment

Respondent sent the Brauns a notice of intent to levy on March 24, 2003, and a Form 668-W, Notice of Levy on Wages, Salary, and Other Income, on July 2, 2003. The Brauns paid respondent $8,409.92 on July 15, 2003, approximately 5 months after petitioner received respondent's final determination rejecting his offers in compromise. The Brauns' payment satisfied their tax liabilities for 1994 and 1997, but left outstanding accrued and unassessed interest.[13] Petitioner appealed to our Court respondent's determination not to abate interest for 1994 and 1997.

_____

[12]On Feb. 10, 2003, the Appeals Office also notified the Brauns that their interest abatement claim would be denied. Petitioner received a letter from respondent denying his interest abatement claim 2 days later.

[13]Of the Brauns' $8,409.92 payment, respondent applied $8,087.71 to the Brauns' 1994 account and $322.21 to the Brauns' 1997 account.

OPINION

We are asked to decide whether respondent abused his discretion in denying petitioner's interest abatement claim. Interest on a deficiency in income tax generally begins to accrue on the due date of the tax return and continues to accrue, compounding daily, until payment is made. See secs. 6601(a), 6622(a).

This Court may order an abatement of interest if there is an abuse of discretion by the Commissioner in failing to abate interest. See sec. 6404(h) (formerly sec. 6404(g)); Lee v. Commissioner, 113 T.C. 145, 149 (1999). In order to demonstrate an abuse of discretion, a taxpayer must prove that the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. See Rule 142(a); Lee v. Commissioner, supra; Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

The Commissioner may abate interest if the taxpayer identifies both an error or delay in payment of tax caused by a ministerial or managerial act of respondent and the period of time over which interest should be abated as a result of the error or delay. See sec. 6404(e) (as currently in effect); Donovan v. Commissioner, T.C. Memo. 2000-220; see also Krugman v. Commissioner, 112 T.C. 230 (1999); Douponce v. Commissioner, T.C. Memo. 1999-398.

In 1996, Congress amended section 6404(e) to allow abatement attributable to erroneous or dilatory performance by respondent of managerial acts, but Congress made the amendment effective only for interest accruing on tax deficiencies or payments for tax years beginning after July 30, 1996. The former standard for interest abatement, therefore, applies to 1994, while the amended provision applies to petitioner's interest abatement claim regarding 1997.

Specifically, for 1994 the Commissioner may abate the assessment of interest with respect to an "error or delay" by an officer or employee of the IRS in performing a "ministerial act." Sec. 6404(e)(1). For 1997, the Commissioner may abate the assessment of interest with respect to any "unreasonable error or delay" resulting from "managerial" as well as ministerial acts. Sec. 6404(e)(1); see Taxpayer Bill of Rights 2, Pub. L. 104-168; sec. 301(a)(1) and (2), 110 Stat. 1457 (1996) (effective for interest accruing with respect to deficiencies or payments for taxable years beginning after July 30, 1996).

A "ministerial act" is a procedural or mechanical act that does not involve the exercise of judgment or discretion and that occurs during the processing of a taxpayer's case after all discretionary decisions in the case have occurred. Goblirsch v. Commissioner, T.C. Memo. 2005-78 (citing Lee v. Commissioner, supra, and Donovan v. Commissioner, T.C. Memo. 2000-220); sec.

301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987); sec. 301.6404-2, Proced. & Admin. Regs.

In contrast, a "managerial act" is an administrative act that occurs during the processing of a taxpayer's case and that involves the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel.  Sec. 301.6404-2(b)(1), Proced. & Admin. Regs.

Congress did not intend the interest abatement statute to be used routinely.  Accordingly, we grant abatement only "where failure to abate interest would be widely perceived as grossly unfair."  Lee v. Commissioner, supra; H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.  Further, the mere passage of time does not establish an error or delay by the Commissioner. See Lee v. Commissioner, supra at 150.

Petitioner contends that respondent committed several errors in processing his offers in compromise.  These errors, petitioner asserts, include respondent's conflicting requests for an information return, and respondent's request for all the Brauns' investment account information when respondent had earlier requested only 401(k) information.  In addition, petitioner alleges that respondent falsely claimed that petitioner did not

respond to an earlier phone inquiry by respondent.[14] These errors, petitioner claims, account for the undue delay in respondent's denial of his offers in compromise. Consequently, petitioner contends that respondent should have abated all interest related to the Brauns' tax liabilities for 1994 and 1997. We address each of petitioner's contentions in turn.

1. Whether Petitioner Established an Error or Delay by Respondent in Performing a Ministerial or Managerial Act

For petitioner to prevail, he must first identify an error or delay by respondent in the performance of a ministerial act for 1994 or a ministerial or managerial act for 1997. Examples of ministerial errors or delays include an unreasonable delay in the transferral of a case among IRS district offices or a delay in the issuance of a deficiency notice after all discretionary decisions in the case have occurred. See sec. 301.6404-2(c), Examples (1) and (2), Proced. & Admin. Regs. Petitioner has alleged no delays attributable to the transferral of his case among IRS offices or a delay in issuing the Brauns a notice of

---

[14]Petitioner cites, as an example of respondent misleading him, a call from respondent on Mar. 21, 2000, requesting pay stubs and Form 433-A from petitioner. In response, petitioner sent respondent two letters on Apr. 1 and Apr. 4, 2000. In a letter on Apr. 5, 2000, respondent stated, among other things, that he had "received no response" from petitioner to his earlier phone call. Because respondent sent the letter merely 4 days after petitioner's earlier letter, however, it is plausible that respondent had not received petitioner's letters before he sent his response.

deficiency.  Petitioner has alleged, therefore, no ministerial delays in this case.

Managerial errors or delays, on the other hand, include situations involving the loss of records or the exercise of judgment relating to management of personnel.  See sec. 301.6404-2(c), Proced. & Admin. Regs.  Delays involving the exercise of such judgment may result from the Commissioner sending an IRS agent to training or granting sick leave to an agent for an extended period without reassigning the agent's cases.  See sec. 301.6404-2(c), Examples (3), (4), (5), (10), Proced. & Admin. Regs.

Petitioner alleges that respondent committed a managerial mistake in requesting that petitioner submit a Form 433-F, then requesting that petitioner submit Form 433-A, which is substantially longer.  One month after respondent requested the longer form, however, respondent told petitioner that he would proceed with his determination based upon the shorter form, as petitioner requested.  The delay, therefore, was not longer than a month.

Moreover, an abatement of interest is not warranted where a significant aspect of the delay is attributable to petitioner. See sec. 6404(e)(1); sec. 301.6404-2(c), Example (13), Proced. & Admin. Regs.  Here, petitioner originally submitted his offer in compromise without proper forms, he increased the amount of his

offer twice, he canceled one conference with respondent and refused others, and he failed to submit all the information that respondent requested. We find that these actions constituted a significant cause of the delay in processing petitioner's offers in compromise. Petitioner's remaining allegations that respondent misled him, discriminated against him, and retaliated against him are not supported by the record.

2.  Whether Petitioner Established a Correlation Between a Specific Period of Delay in Payment and an Error or Delay by Respondent

Further, section 6404(e) requires that petitioner not only identify a mistake by respondent, but link the mistake to a specific period of delay in payment for which interest should be abated. Petitioner has alleged no specific period during which interest should be abated, other than objecting generally to all interest flowing from the Brauns' tax liabilities for 1994 and 1997.

The requisite correlation between an error or delay attributable to the Commissioner and a specific period of time is, for the most part, missing where a taxpayer requests that all interest with respect to the deficiencies be abated. See Donovan v. Commissioner, T.C. Memo. 2000-220. Petitioner's request amounts to a claim for an exemption from interest, rather than a claim for abatement of interest. Id. Congress did not intend the statute to be used "routinely to avoid payment of interest."

See H. Rept. 99-426, <u>supra</u> at 844, 1986-3 C.B. (Vol. 2) at 844;

S. Rept. 99-313, <u>supra</u> at 208, 1986-3 C.B. (Vol. 3) at 208.

3.  <u>Whether Petitioner Would Have Paid the Tax Liability Earlier but for Respondent's Error</u>

Finally, no abatement is warranted where, notwithstanding a mistake by the Commissioner, no earlier payment would have been made.  See <u>Wright v. Commissioner</u>, T.C. Memo. 2004-69, affd. 125 Fed. Appx. 547 (5th Cir. 2005); see also <u>Spurgin v. Commissioner</u>, T.C. Memo. 2001-290; <u>Bo v. Commissioner</u>, T.C. Memo. 2005-150. Interest accruing merely because a taxpayer fails to pay the assessed tax is not subject to abatement under section 6404(e). <u>Ahmaogak v. Commissioner</u>, T.C. Memo. 2003-238; <u>Donovan v. Commissioner</u>, <u>supra</u>; <u>Douponce v. Commissioner</u>, T.C. Memo. 1999-398.  Petitioner has not demonstrated that the Brauns would have paid their tax liabilities for 1994 and 1997 earlier but for respondent's actions.

4.  <u>Conclusion</u>

We recognize that petitioner underwent severe physical trauma, as well as job loss before and after his injury, all of which contributed to the Brauns' failing to file or pay their income tax timely for 1994 or 1997.  Our jurisdiction is limited, however, to determining whether respondent abused his discretion in not abating interest.

From our review of the record, petitioner has not shown that respondent was dilatory in performing a ministerial or managerial

act.  In fact, our review reflects that respondent followed regular IRS procedures in processing petitioner's various offers in compromise and that interest accruals for 1994 and 1997 were merely the result of petitioner's failure to pay the entire balance owed.  We therefore conclude that respondent did not abuse his discretion by denying petitioner's request to abate interest on the Brauns' unpaid tax liabilities for 1994 and 1997.  Accordingly, we sustain respondent's determination.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.