T.C. Memo. 2008-13

UNITED STATES TAX COURT

ROBERT A. FRANKLIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15113-05.                    Filed January 28, 2008.

Robert A. Franklin, pro se.

<u>Jeffrey S. Luechtefeld</u>, for respondent.

MEMORANDUM OPINION

WELLS, <u>Judge</u>:  Respondent determined that petitioner is not
entitled to an abatement of interest pursuant to section 6404(e)[1]
for 1998, 1999, and 2000.  The issue for decision is whether

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code as amended.

respondent's refusal to abate interest constitutes an abuse of discretion.

## Background

The parties' stipulations are incorporated into this Memorandum Opinion by reference and, accordingly, are found as facts in the instant case. At the time he filed his petition, petitioner resided in Tampa, Florida.

On August 22, 2001, Internal Revenue Service (IRS) Agent Julie A. Kelley (Agent Kelley) initiated examination of petitioner's 1999 return. On September 10, 2001, Agent Kelley initiated examination of petitioner's 1998 return. On September 25, 2001, Agent Kelley worked on notices of proposed adjustments to items reported on petitioner's income tax returns for 1998 and 1999.

On September 27, 2001, Agent Kelley sent petitioner a letter requesting an extension of the limitations period for assessing petitioner's taxes for 1998. Agent Kelley drew up a Revenue Agent Report on October 2, 2001. Petitioner discussed the Revenue Agent Report with Agent Kelley on October 5, 2001. Subsequently, petitioner discussed the Revenue Agent Report with his representative, Laymond Cloud (Mr. Cloud), and informed Agent Kelley on October 22, 2001, that he would not agree to sign a report until adjustments to all of his returns under audit were consolidated into one report. On October 24, 2001, Agent Kelley

started the examination of petitioner's 2000 tax return. On October 31, 2001, Agent Kelley prepared notices of proposed adjustment to items reported on petitioner's return for that year.

Agent Kelley, her supervisor, Group Manager Patricia Carter (Group Manager Carter), petitioner, and Mr. Cloud held a telephone conference on November 7, 2001. The parties to the telephone conference agreed that Mr. Cloud had until November 23, 2001, to decide whether the case should be closed unagreed.

On November 14, 2001, petitioner retained Fred Schultz (Mr. Schultz) as his representative. On November 20, 2001, Mr. Schultz contacted Agent Kelley by phone and faxed her a power of attorney form.

On December 7, 2001, Agent Kelley prepared a notice of proposed adjustment regarding petitioner's return for 2000. On December 17, 2001, Agent Kelley continued working on the case. On December 18, 2001, Agent Kelley prepared notices of proposed adjustment to items reported on petitioner's returns for 1998 and 1999. During early January 2002, Agent Kelley faxed Mr. Schultz a revised Revenue Agent Report and scheduled a conference with Mr. Schultz for January 10, 2002. At the January 10, 2002, conference, Agent Kelley and Mr. Schultz could not reach an agreement. Consequently, Agent Kelley and Mr. Schultz scheduled a subsequent meeting, and Mr. Schultz agreed to provide

additional information before that conference. On January 18, 2002, Mr. Schultz provided the additional information. On January 22, 2002, Agent Kelley, Mr. Schultz, petitioner, and Group Manager Carter attended a conference, at which they could not agree.

During February 2002, Agent Kelley was temporarily reassigned. On February 4 and 14, 2002, Agent Kelley informed Mr. Schultz of the temporary reassignment. Agent Kelley was temporarily reassigned during parts of February and March 2002. On March 4, 2002, Agent Kelley contacted Mr. Schultz and worked on petitioner's case. On April 17, 2002, respondent determined that the case should be closed unagreed. On April 23, 2002, respondent closed the case unagreed.

On May 2, 2002, respondent issued petitioner a Letter 950 (30-day letter) for 1998, 1999, and 2000. On May 31, 2002, Mr. Schultz requested consideration by respondent's Appeals Office. On June 17, 2002, respondent's Tampa Appeals Office received petitioner's file. On June 25, 2002, respondent assigned petitioner's case to Appeals Officer Roger Caruso (AO Caruso) and mailed petitioner a letter informing him of AO Caruso's receipt of the case.

On July 5, 2002, respondent sent petitioner a Form 872, Consent to Extend the Time to Assess Tax, for 1998 and 1999. Initially, Mr. Schultz informed respondent that petitioner did

not want to extend the period of limitations.  However, later in July, Mr. Schultz agreed to extend the period of limitations to March 31, 2003, and AO Caruso prepared a new Form 872. On August 2, 2002, AO Caruso received the Form 872 signed by petitioner, extending the period of limitations to March 31, 2003, for assessment of petitioner's 1998 income taxes.

From September 9 through 13, 2002, AO Caruso attended mediation training.  On September 16, 2002, the parties agreed to hold an Appeals conference on November 7, 2002.  On October 7, 2002, Appeals Officer Nelson Leduc (AO Leduc) replaced AO Caruso. Mr. Schultz and respondent each left a voicemail for the other in October.  On October 31, 2002, AO Leduc prepared a form to extend the period of limitations for assessment until December 31, 2003. However, at the Appeals conference held on November 7, 2002, Mr. Schultz declined to extend the period of limitations for assessment and instead requested 2 weeks to review relevant tax law.  Between November 25 and December 5, 2002, Mr. Schultz and AO Leduc discussed extending the period of limitations. Respondent received from petitioner a signed extension of the period of limitations on assessment on December 5, 2002, extending the limitations period to December 31, 2003, for 1998 and 1999.

AO Leduc was on annual leave from December 14, 2002, to January 13, 2003.  On January 13 and 14, 2003, AO Leduc contacted

petitioner to ascertain petitioner's position regarding an Appeals conference that had been scheduled for February 10, 2003. On January 16, 2003, AO Leduc received petitioner's written position. As scheduled, AO Leduc, petitioner and Mr. Schultz met for an Appeals conference on February 10, 2003. Mr. Schultz contacted AO Leduc on March 17, 2003, and stated that the requested documents would be mailed the next day. After receiving the documents on March 26, 2003, AO Leduc initiated review of the material on April 1, 2003. After reaching a decision on April 2, 2003, AO Leduc mailed the decision to Mr. Schultz and also sent the case to respondent's technical section for final computation.

On May 12, 2003, AO Leduc mailed to Mr. Schultz Form 870-AD, Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment. After a telephone call from each party, AO Leduc received the signed Form 870-AD on June 5, 2003, signed it, and sent it to Appeals Team Manager Chester Kreidich (ATM Kreidich). On June 5, 2003, AO Leduc prepared an "Appeals Transmittal and Case Memo." On June 12, 2003, ATM Kreidich signed the Form 870-AD.

On July 7, 2003, the Tampa Appeals Office closed petitioner's case. The Tampa Appeals Office thereafter sent petitioner's case file to the Jacksonville Appeals Office to complete processing the case. On July 15, 2003, the Jacksonville

Appeals Office received the file.  On August 5, 2003, the assessment date was entered into the IRS's computer system.

On August 25, 2003, the IRS assessed deficiencies in petitioner's income tax, with interest, as follows:  For 1998, a deficiency of $2,308 and $833.54 of accrued interest (interest calculated from April 16, 1999, to August 25, 2003); for 1999, a deficiency of $26,916 and $6,885.15 of accrued interest (interest calculated from April 16, 2000, to August 25, 2003); for 2000, a deficiency of $34,328 and $4,948.79 of accrued interest (interest calculated from April 16, 2001, to August 25, 2003).

On September 22, 2003, petitioner filed Form 843, Claim for Refund and Request for Abatement.  Petitioner requested interest abatement as follows:  For 1998, $312.55 of interest abatement; for 1999, $3,430.19 of interest abatement; and for 2000, $3,648.65 of interest abatement.  Subsequently, the IRS sent petitioner a letter stating that petitioner's request for interest abatement had been forwarded to respondent's Memphis Office for review.

After assignment of the request for interest abatement to Revenue Agent Susan Harbin (Agent Harbin) in Jacksonville, Florida, on September 29, 2004, Agent Harbin suspended the interest which had accrued during a portion of the examination and otherwise proposed to deny petitioner's request for interest

abatement. Agent Harbin informed petitioner of her decisions by letter on November 22, 2004. The IRS adjusted petitioner's account to reflect statutory suspension of interest of $342.37 for 1998 (for October 15, 2000, to May 22, 2002) and of $811.61 for 1999 (for October 15, 2001, to May 22, 2002). On December 4, 2004, petitioner sent the IRS a letter requesting abatement in full. The Jacksonville Appeals Office sent petitioner a letter on December 20, 2004, acknowledging receipt of petitioner's request for interest abatement.

On January 4, 2005, Mr. Schultz contacted the IRS to inquire about petitioner's request for interest abatement. On January 7, 2005, respondent informed Mr. Schultz that petitioner's request for interest abatement would be forwarded to the Area Director. After the IRS assigned petitioner's request for interest abatement on January 21, 2005, to Appeals Officer Charles Kelly (AO Kelly) in the Jacksonville Appeals Office, AO Kelly sent petitioner a letter dated January 27, 2005, acknowledging receipt of petitioner's request for interest abatement.

AO Kelly sent petitioner a letter dated March 31, 2005, summarizing petitioner's request for interest abatement. It included a timeline of petitioner's case and analyzed his request. In the letter, AO Kelly informed petitioner that respondent had determined that delays in petitioner's case were not unreasonable. AO Kelly also requested that petitioner

provide contrary authority.  After the aforementioned statutory suspension of interest, the IRS prepared an "Appeals Transmittal Memorandum and Case Memo" on May 18, 2005, and the IRS issued a Full Disallowance/Final Determination regarding petitioner's request for interest abatement, which incorporated by reference the March 31, 2005, letter to petitioner.

## Discussion

Pursuant to section 6404(e)(1),[2] the Commissioner may abate an assessment of interest on:  (1) A deficiency attributable to an unreasonable error or delay by an IRS official in performing a ministerial or managerial act or (2) a payment of tax to the extent that an error or delay by the taxpayer in paying such tax is attributable to an IRS official being erroneous or dilatory in performing a managerial or ministerial act.

In deciding whether to grant relief, an error or delay by an officer or employee of the IRS shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the IRS has contacted the taxpayer in writing with respect to such deficiency or payment. Id.  Section 6404(e) is not intended to be routinely used to

---

[2]Congress amended sec. 6404(e) in 1996 to permit abatement of interest for "unreasonable" error and delay in performing a ministerial or "managerial" act.  Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301(a)(1) and (2), 110 Stat. 1457 (1996). That amendment applies to tax years beginning after July 30, 1996.  Id. sec. 301(c), 110 Stat. 1457.

avoid payment of interest.  Rather, Congress intended abatement of interest only where failure to do so "would be widely perceived as grossly unfair."  H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.

The term "ministerial act" means a procedural or mechanical act that does not involve the exercise of judgment or discretion and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place.  See sec. 301.6404-2(b)(2), Proced. & Admin. Regs.  A decision concerning the proper application of Federal tax law is not a ministerial act.  See id.

The term "managerial act" means an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel. See sec. 301.6404-2(b)(1), Proced. & Admin. Regs.  A decision concerning the proper application of Federal tax law is not a managerial act.  See id.

The standard for reviewing the Commissioner's decision regarding abatement of interest is abuse of discretion.  See sec. 6404(h); Camerato v. Commissioner, T.C. Memo. 2002-28. Generally, the taxpayer must show that, by denying an abatement of interest, the Commissioner exercised his discretion

arbitrarily, capriciously, or without sound basis in fact or law. Lee v. Commmissioner, 113 T.C. 145, 149 (1999); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).  However, "The Commissioner is in the best position to know what actions were taken by IRS officers and employees during the period for which petitioners' abatement request was made and during any subsequent inquiry based upon that request."  Jacobs v. Commissioner, T.C. Memo. 2000-123.

Petitioner alleges that the IRS committed unreasonable errors or delays in performing managerial or ministerial acts. In order to qualify for relief pursuant to section 6404(e), a taxpayer must generally establish a direct causal link between an unreasonable error or delay by the IRS in performing ministerial or managerial acts and a specific period during which interest accrued.  Guerrero v. Commissioner, T.C. Memo. 2006-201; Braun v. Commissioner, T.C. Memo. 2005-221.  Petitioner failed to establish a direct causal link between a claimed unreasonable error or delay by the IRS and a specific period during which interest accrued on his liabilities.  Consequently, the Commissioner's final determination letter did not address that claim.  Accordingly, petitioner's argument is without merit.

Additionally, petitioner alleges that there was an unreasonable error or delay "in the return of the case to the agent from review since the report was written incorrectly."

However, we can find no evidence in the administrative record of any error or delay in the preparation of a report.  Petitioner also alleges that there was an unreasonable error or delay in "the time [the case] was in the Appeals division and transferred to the Miami Office and then back to Tampa."  However, we can find no evidence in the administrative record that petitioner's case was ever transferred to the Miami Appeals Office.

We conclude that petitioner has failed to show that any of respondent's employees or officers committed an unreasonable error or delay in performing ministerial or managerial acts.  Accordingly, we hold that respondent's denial of petitioner's request for interest abatement was not arbitrary, capricious, or without sound basis in fact or law, and we uphold respondent's final determination not to abate interest.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant, moot or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.