T.C. Memo. 2012-183

UNITED STATES TAX COURT

MICHAEL ANTHONY WINTERS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17072-10L.                    Filed July 2, 2012.

Michael Anthony Winters, pro se.

Inga C. Plucinski, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  This case arises from a petition filed in response to a

notice of determination concerning collection action(s) under section 6320[1] and/or

_____

[1]All section references are to the Internal Revenue Code in effect at all
relevant times.

6330 dated July 2, 2010, with respect to petitioner's taxable year 2008 (notice of determination).

We must decide whether to sustain the determinations in the notice of determination. We hold that we sustain those determinations.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner resided in Montana at the time he filed the petition in this case.

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for his taxable year 2008 (2008 return). In that return, petitioner showed Federal income tax (tax) due of $42,896 and an addition to tax due of $1,379 for his failure to pay required estimated tax. When petitioner filed his 2008 return, he paid only $11,069 of the tax shown due in that return.

On June 15, 2009, respondent assessed the total tax shown in petitioner's 2008 return, the addition to tax shown in that return for petitioner's failure to pay required estimated tax, an addition to tax under section 6651(a)(2), and interest as provided by law. (We shall refer to any such unpaid amounts, as well as interest as provided by law after June 15, 2009, as petitioner's unpaid 2008 liability.)

On June 15, 2009, respondent issued to petitioner a notice of assessment and a demand for payment with respect to petitioner's unpaid 2008 liability. In

response, petitioner sent respondent a letter dated June 26, 2009, in which he stated: "I am in receipt of the above referenced notice regarding my balance of 2008 income tax due. * * * My request is that IRS withdraw all penalties and interest on the tax due. The current amount due is then $31,827.00, which I will pay. Please respond immediately."

On July 20, 2009, respondent sent petitioner a notice informing him of respondent's intention to levy in order to collect petitioner's unpaid 2008 liability. In response, petitioner sent respondent a letter dated July 29, 2009, in which he stated:

> I received the above referenced notice informing me that you intend to levy certain assets of mine for 2008 Income Taxes due. On June 26, 2009, I sent you a letter requesting leniency and a removal of the penalty and interest for not submitting estimated tax payments. As of this date I have not received any response from you.
>
> I am once again requesting the removal of the penalties and interest.

On September 21, 2009, respondent sent to petitioner a final notice of intent to levy and notice of your right to a hearing (notice of intent to levy) with respect to petitioner's unpaid 2008 liability.

On October 19, 2009, in response to the notice of intent to levy, petitioner sent respondent a package that included (1) Form 12153, Request for a Collection Due Process or Equivalent Hearing (Form 12153), and (2) Form 656, Offer in

Compromise (Form 656). In his Form 12153, petitioner (1) indicated his disagreement with the notice of intent to levy, (2) requested an offer-in-compromise as a collection alternative to the proposed levy, and (3) requested a hearing (section 6330 hearing) with respondent's Appeals Office (Appeals Office).

Although the package that petitioner sent to respondent that included petitioner's Form 12153 was received by respondent on October 21, 2009, it was (1) either lost or misplaced by respondent and (2) marked as having been received by respondent on December 8, 2009, which was more than 30 days after the date of the notice of intent to levy. As a result, respondent determined that petitioner's Form 12153 was untimely. Thereafter, petitioner provided proof to respondent that his Form 12153 had been received by respondent on October 21, 2009, and thus was filed timely.

Sometime in February 2010, petitioner contacted respondent to inquire about the status of the offer-in-compromise that he had submitted in October 2009. Petitioner was told at that time that that offer-in-compromise was "not process-able".

A representative of respondent's Appeals Office (settlement officer) who was assigned petitioner's Form 12153 sent petitioner a letter dated May 14, 2010 (May 14, 2010 letter). In that letter, the settlement officer stated in pertinent part:

Appeals received your request for a Collection Due Process (CDP) Hearing. I have scheduled a telephone conference call for you on June 3, 2010 at 9:00 AM EST.

* * * * * * *

Your CDP hearing request regarding proposed levy action on the following tax period was timely: Form 1040, for tax period December 31, 2008. During your hearing, and until any appeals become final for these tax periods, the legal collection period is suspended and no levy action may be taken.

During the hearing, I must consider:

- Whether the IRS met all the requirements of any applicable law or administrative procedure

- Any nonfrivolous issues you wish to discuss. These can include:

    1. Collection alternatives to levy such as full payment of the liability, installment agreement, offer in compromise or temporary suspension of collection action if the action imposes a hardship condition. * * *

    2. Challenges to the appropriateness of collection action. * * *

In the May 14, 2010 letter, the settlement officer also asked petitioner to send her by June 1, 2010, certain information, including the following: completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, supporting documentation including copies of wage statements for the

most recent three months, completed Form 656, and any applicable fees. (We shall refer to the two forms that the settlement officer asked petitioner to complete and send to her as the requested offer-in-compromise forms and the supporting financial documentation that she asked him to send to her as the requested financial documentation.)

The settlement officer informed petitioner in the May 14, 2010 letter that, in order to be able to consider collection alternatives at the telephonic section 6330 hearing scheduled for 9 a.m. on June 3, 2010, she would have to receive from him the requested offer-in-compromise forms and the requested financial documentation. Petitioner did not send the settlement officer those forms or that documentation on or before June 1, 2010.

On June 3, 2010, at 9 a.m., the settlement officer attempted to contact petitioner at the telephone number that had been provided to her. The settlement officer was unable to reach petitioner at that time. As a result, on June 3, 2010, the settlement officer sent petitioner a letter dated June 3, 2010 (June 3, 2010 letter), in which she stated in pertinent part:

> I sent you a letter dated May 14, 2010 offering you a telephonic Collection Due Process conference. The conference was scheduled for June 3, 2010 at 9:00AM EST.

I tried calling you at the scheduled time but you were not available and you had not called to indicate that this date and/or time was not convenient.

* * * * * * *

Please be advised that we will make a determination in the Collection Due Process hearing you requested by reviewing the Collection administrative file and whatever information you have already provided.

If you would like to provide information for our consideration, please do so by **June 22, 2010**.

Later on June 3, 2010, after the settlement officer had sent the June 3, 2010 letter to petitioner, petitioner attempted to contact the settlement officer and left her a voicemail message providing her with a different telephone number at which to contact him. Thereafter, on June 3, 2010, the settlement officer returned petitioner's telephone call, and a telephonic hearing under section 6330 (June 3, 2010 telephonic hearing) was held.

On June 3, 2010, after the June 3, 2010 telephonic hearing, the settlement officer made the following pertinent entries in her so-called Case Activity Record Print:

Taxpayer said he did receive the notices but he was unable to pay the amount owed. Taxpayer said he submitted an offer back in October of 2009 and never heard anything from that. Per IDRS taxpayer's offer was declared not processable and ACS notes show taxpayer called in Feb. 2010 and they informed him of this, he says he doesn't remember calling in Feb. But he has all the paper work and he can resubmit the

offer.  S/O [settlement officer] asked if he could fax it and he said he would have everything together within 4 weeks.  S/O informed him she would be making her determination and his case will be going back to collection and he should submit his offer as soon as possible to the address [for respondent's centralized offer-in-compromise unit] listed in the offer booklet.

Compliance is sustained; taxpayer did not provide any information nor is there any information in case file that warrants the release of the levy.

The settlement officer prepared a document entitled "Appeals Transmittal and Case Memo - CDP" (case memo).  That case memo stated in pertinent part:

Closing Code:  Determination Letter issued * * *
Reason Code:  CS - Collection Sustained
Resolution Reason:  OT - Other - Form 433A, 656 and any applicable fees not received
Closing Information for:  Notice of Levy sustained

The settlement officer signed the case memo on June 17, 2010, and the "Appeals Team Manager" approved the case memo on June 21, 2010.

On June 23, 2010, respondent's centralized offer-in-compromise unit received from petitioner an offer-in-compromise (petitioner's June 23, 2010 offer-in-compromise).

On July 2, 2010, respondent's Appeals Office issued to petitioner the notice of determination on which this case is based.  That notice stated in pertinent part:  "All legal and procedural requirements were met prior to the issuance of the L1058, and

the settlement officer concludes that issuance of the L1058 was appropriate. The proposed levy action is sustained in Appeals." An attachment to the notice of determination stated in pertinent part:

## Summary and Recommendation

You filed a request for a Collection Due Process (CDP) Hearing with the Appeals Office under the Internal Revenue Code (IRC) Section §6330 in response to a Final Notice, Notice of Intent to Levy, and Notice of Your Right to a CDP Hearing for the tax period listed above.

The determination in Appeals is Compliance has followed all applicable laws and administrative procedures. The proposed offer in compromise could not be considered during this CDP hearing because you failed to provide all requested information. Therefore, the proposed levy action is the appropriate action in this case.

\*  \*  \*  \*  \*  \*  \*

## Discussion and Analysis

**1. Verification of Legal and Procedural Requirements**
The requirements of applicable law or administrative procedures have been met and the actions taken or proposed were appropriate under the circumstances.

- The Settlement Officer verified through transcripts analysis that the assessment was properly made per IRC §6201 for each tax and period listed on the CDP notice.

- The notice and demand for payment letter was mailed to the taxpayers' last known address, within 60 days of the assessment, as required by IRC §6303.

- Per transcript analysis, there was a balance due when the CDP levy notice was issued per IRC 6330 and IRC 6331(a).  There is still a balance due.

- Per transcript analysis, a CDP levy notice was sent by certified mail return receipt requested to the taxpayers' last known address.

- The Settlement Officer has verified the collection period allowed by statute to collect the tax has been suspended by the appropriate computer code for the tax period at issue.

- There is no offer-in-compromise or installment agreement pending or currently in effect.  There is also no pending innocent spouse request.

- There is no pending bankruptcy case, nor did you have pending bankruptcy case at the time of the CDP notice was sent (11 U.S.C. §362(a)(6)).

- This Appeals employee has had no prior involvement with the taxpayers concerning the applicable tax period before this CDP case.

## 2.  Relevant Issues Raised by the Taxpayer

**Issued Raised by the Taxpayer:**
You did not challenge the existence or the amount of the liability on Form 12153, Request for a Collection Due Process or Equivalent Hearing.  During the conference you said you knew you owed the money you just didn't have anyway to pay it and that's why you submitted an offer in compromise in October.  You said you never heard anything from that request.

**Response:**  The Settlement Officer explained that according to our records you called the office in February and they informed you that your offer was not processable.  The Settlement Officer asked if you had the paperwork from the offer and you said yes.  The Settlement Officer suggested you resubmit your offer and you stated you would

need 4 weeks to get the papers together.  The Settlement Officer suggested you do it as soon as possible.

**Collection Alternative Offered by the Taxpayer:**
You proposed an offer in compromise on Form 12153 and during the conference.

**Response:**  During the conference, the Settlement Officer explained to you the proposed offer in compromise could not be considered during this CDP hearing process because you failed to provide all requested information.  The Settlement Officer advised you to resubmit your offer to the address [for respondent's offer-in-compromise unit] listed in the offer booklet.

**Challenges to the Existence of Amount of Liability:**
You did not dispute the liability on Form 12153, nor during the conference.

**Other Issues Raised by the Taxpayer:**
You raised another issue on Form 12153; that your original request  for the CDP hearing was timely.  You submitted copies of your Fed Ex mailing to prove this.

**Response:**  Per your Fed Ex receipt, the request for the CDP hearing was indeed timely and the Settlement Officer explained to you that you have the right to go to tax court if you disagree with the Settlement Officer's decision.

**3.  Balancing of the Need for the Efficient Collection of the Taxes With the Taxpayer's Concern That the Collection Action be no More Intrusive than Necessary.**

Appeals has verified, or received verification, that applicable laws and administrative procedures have been met; has considered the issues raised; and has balanced the proposed collection with the legitimate concern that such action be no more intrusive than necessary by IRC Section 6330 (c)(3).

Collection alternatives include full payment, installment agreement and offer in compromise.

We were unable to offer you any collection alternatives since you did not provide any of the requested information. Appeals determination is that the proposed levy action balances the need for efficient collection of taxes with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary. The Notice of Intent to Levy is sustained. [Reproduced literally.]

On February 3, 2011, after petitioner filed a petition with the Court in response to the notice of determination that the Appeals Office issued with respect to his taxable year 2008, respondent's centralized offer-in-compromise unit rejected petitioner's June 23, 2010 offer-in-compromise. Petitioner appealed that rejection to respondent's Appeals Office.

Respondent assigned petitioner's appeal of the rejection of his June 23, 2010 offer-in-compromise to Appeals officer Steven Lutter (Mr. Lutter). On April 28, 2011, Mr. Lutter made the following pertinent entry in his Case Activity Record Print: "Reviewed offer. The letter [from respondent's centralized offer-in-compromise unit] rejecting the [June 23, 2010] OIC was dated 2-3-2011. The request for an appeal was postmarked on 2-28-2011. Therefore, the appeal request

was timely * * *. * * * It looks like there was a CDP filed that went on to tax court which perhaps led to an abatement of some of the tax."[2]

On May 25, 2011, Mr. Lutter made the following pertinent entries in his Case Activity Record Print:

> I received an email from Inga Plucinski on 5-24-2011. She is with counsel. Apparently, a determination letter was issued sustaining collection by levy while this offer was being worked in the field. It should have been transferred to be considered as an alternative resolution. TP petitioned the tax court and now Ms. Plucinski has been assigned to the case. It is scheduled for trial the week of 9-12-2011. She wants me to review the offer and make a decision by the end of July. * * *
>
> Reviewed offer. TP listed his occupation as roofing on the Form 433B. * * * He is a sole prop of a upscale roofing company specializing in copper, lead and zinc roofs and other architectural metal work. Income was the only issue in the appeal. TP claims an economic hardship. TP claimed a 24,336 loss in 2010. I found he is apparently living with a Myrna Williams. The couple deposited 132,745 in their joint checking account over a three month period in April, May and June 2010. 56,000 of that was a wire transfer from, apparently, a separate account of Myrna's. Without that deposit, the couple deposited 77,765 over the three months or an average of 25,921 monthly. Myrna is also a sole prop of some sort of business. She reported a 10,546 profit in 2010. I question the 2010 1040. * * *

---

[2]It appears that petitioner's unpaid 2008 liability was reduced at some point by a claimed net operating loss carryback of $6,815 to petitioner's taxable year 2008.

Mr. Lutter sent petitioner a letter dated May 25, 2011, regarding petitioner's appeal of respondent's centralized offer-in-compromise unit's rejection of petitioner's offer-in-compromise. That letter stated:

> I have scheduled the hearing you requested on the above date [June 24, 2011] to discuss the appeal of your rejected offer in compromise. The conference can be held at my office or over the telephone. If you prefer a telephone conference, please call me * * *.
>
> Please provide the following information to me no later than June 13, 2011:
>
> 1. Copies of statements from the most recent six months for all financial accounts (checking, savings, 401k, IRA, brokerage, etc.) in which you have an interest. Include all pages.
> 2. An appraisal or market analysis of your property at 706 Black Avenue, Bozeman, Montana. Include a payoff from your mortgage lender, if any.
> 3. A profit and loss statement for your business, Mikes Metal Work/Winters Roof Company for 2011 year-to-date.
> 4. Copies of your business bank statements for the past six months.
> 5. A listing of your housing expenses.
> 6. Documentation of your out-of-pocket health care costs. Most physicians and pharmacies will provide a printout of your co-pays for the last year.
> 7. A valuation of your patent, US6348673.
> 8. When considering an offer in compromise where only one member of a joint household is liable for the tax, I need to know the income of the non-liable party. I'll compute total household income and allow you a pro-rata share of expenses based on your contribution to household income. Therefore, please send documentation of Myrna Williams' 2011 year-to-date income from all sources.

If you cannot attend the conference at the scheduled date and time, please let me know within five days of the date of this letter. I will try to arrange a mutually agreeable time and date.

If you do not provide the requested information, I'll recommend we sustain the rejection of your offer.

On May 31, 2011, Mr. Lutter made the following pertinent entry in his Case

Activity Record Print:

TP returned my call. * * * TP seemed surprised I knew about some of the information I'd questioned. * * * TP wanted to know if this is the same thing he was through a year ago. I told him I presumed that was with the offer specialist and the initial review of the offer. I explained he appealed that decision. He said it appeared I was out to make him pay the entire balance. I told him that was not my purpose. I explained I would compute his ability to pay and, if he can pay in full, I'll recommend we sustain the rejection of the offer. * * * TP said he had most of the information and would send it.

On June 2, 2011, Mr. Lutter made the following pertinent entry in his Case

Activity Record Print:

TP called. We had a very long discussion. * * * He complained about the amount of the accruals. He wanted to know if the penalty and interest could be waived. I explained we could abate interest if the government had failed to perform some act. I told him I do not see that in his case. I explained we could abate penalties if there is reasonable cause. I also do not see reasonable cause here. TP was confused about all that is going on with the case. I explained he had two issues going on at the same time. Appeals considered collection by levy in a CDP case. Appeals sustained the decision to collect via levy. TP petitioned the tax court. I explained he can continue to go forward with that. The other issue going on is consideration of his offer. If we agree to compromise the tax, there will be no reason for him to go forward to tax

court. If the rejection of the offer is sustained, TP can still go to tax court to have his issue heard. TP said he could not pay the 32,000 liability and could file bankruptcy. I explained that was his right. However, if he files, I can no longer consider his offer. TP asked about his rights in providing me the information I requested. He thought what I was asking for was invasive. I explained he did not have to send me the information I'd asked for. I went on to advise him if he did not, I would recommend we sustain the rejection of his offer. The choice in the matter is
his. * * *

Petitioner sent Mr. Lutter a letter dated June 6, 2011, in which he stated in

pertinent part:

Thank you for the scheduled hearing. * * * Please find enclosed information as requested in your letter of 05/25/11. The enclosed does not include information requested in number(s) 1., 4., and 8. It's abundantly clear, from our phone conversation, you have complete and easy access to all banking and tax information for Myrna and me. * * * Our housing expenses are approximately $1000.00/month. The bulk of this is property tax. My patent isn't worth the paper it's written on and I receive no compensation from it.

On June 10, 2011, Mr. Lutter made the following pertinent entry in his Case

Activity Record Print:

Received TP's response to my request for information. TP sent only a few of the items I'd requested. TP sent a copy of his property tax bill. * * * If he calls for the conference, I'll explain to the TP that I'll recommend we sustain the rejection of his offer because he did not furnish the information I'd requested and refer him to IRM 5.8.5 and explain how he can access that information.

On June 24, 2011, Mr. Lutter made the following entry in his Case Activity Record Print: "Prepared for the conference. TP did not call for the conference."

On July 1, 2011, Mr. Lutter made the following entry in his Case Activity Record Print: "TP did not call for the conference or later. I'll recommend we sustain the rejection."

In July 2011, respondent's Appeals Office sustained respondent's offer-in-compromise unit's rejection of petitioner's offer-in-compromise.

## OPINION

Petitioner does not seek to challenge the existence or the amount of his underlying tax liability. Instead, he argues that he is unable to pay petitioner's unpaid 2008 liability.

Where, as is the case here, the validity of the underlying tax liability is not properly placed at issue, the Court will review the determination of the Commissioner of Internal Revenue for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

We address first petitioner's position that he was denied his right to a fair hearing under section 6330 because respondent's Appeals Office determined to sustain respondent's proposed levy before considering petitioner's June 23, 2010 offer-in-compromise. On the record before us, we reject that position.

In the settlement officer's letter dated May 14, 2010, she asked petitioner to send her by June 1, 2010, the requested offer-in-compromise forms and the requested financial documentation. The settlement officer informed petitioner in the May 14, 2010 letter that, in order to be able to consider collection alternatives at the telephonic section 6330 hearing scheduled for 9 a.m. on June 3, 2010, she would have to receive from him by June 1, 2010, those forms and that documentation. Petitioner did not send the settlement officer the requested offer-in-compromise forms or the requested financial documentation on or before June 1, 2010.

On June 3, 2010, at 9 a.m., the settlement officer attempted to contact petitioner at the telephone number that had been provided to her. The settlement officer was unable to reach petitioner at that time. As a result, on June 3, 2010, the settlement officer sent petitioner the June 3, 2010 letter, in which she stated in pertinent part: "Please be advised that we will make a determination in the Collection Due Process hearing you requested by reviewing the Collection administrative file and whatever information you have already provided. If you would like to provide information for our consideration, please do so by **June 22, 2010**."

Later on June 3, 2010, after the settlement officer had sent the June 3, 2010 letter to petitioner, petitioner attempted to contact the settlement officer and left

her a voicemail message providing her with a different telephone number at which to contact him. Thereafter, on June 3, 2010, the settlement officer returned petitioner's telephone call, and the June 3, 2010 telephonic hearing was held.

During the June 3, 2010 telephonic hearing, petitioner asked the settlement officer about the offer-in-compromise that he had submitted in October 2009. The settlement officer explained to petitioner that, according to respondent's records, petitioner had called regarding that offer-in-compromise in February 2010, and he was told at that time that that offer was "not processable". During the June 3, 2010 hearing, petitioner told the settlement officer that he had "all the paper work" and that he could resubmit the offer-in-compromise. Consequently, the settlement officer asked petitioner to submit that paperwork by facsimile. Although petitioner had submitted an offer-in-compromise in October 2009 and indicated to the settlement officer that he had "all the paper work" to resubmit it, petitioner told the settlement officer that he needed an additional four weeks to provide the requested offer-in-compromise forms and the requested financial documentation. As a result, the settlement officer advised petitioner that she would be making a determination with respect to respondent's proposed levy and that he should submit any offer-in-compromise to respondent's centralized offer-in-compromise

unit.[3]  On June 23, 2010, respondent's centralized offer-in-compromise unit received

from petitioner petitioner's June 23, 2010 offer-in-compromise.  On the record

before us, we find that respondent's Appeals Office did not abuse its discretion in

determining to sustain respondent's proposed levy before considering petitioner's

June 23, 2010 offer-in-compromise.[4]

We now address petitioner's position that respondent abused respondent's

discretion in failing to abate any additions to tax and interest under section 6404 with

respect to his taxable year 2008.

---

[3]In support of his position that the Appeals Office abused its discretion in determining to sustain respondent's proposed levy before receiving petitioner's June 23, 2010 offer-in-compromise, petitioner relies on Judge v. Commissioner, T.C. Memo. 2009-135.  In Judge, we held that the Appeals Office abused its discretion in denying the taxpayer's request for a brief extension of time to submit financial documentation where the taxpayer (1) had provided promptly to the Appeals Office information that that office had requested and received but misplaced and (2) had mailed Form 433-A and supporting documentation to the Appeals Office two days before the section 6330 hearing was scheduled to be held, but the Appeals Office had not received that form and that documentation by the time of that hearing.  We find Judge to be materially distinguishable from the instant case and petitioner's reliance on that case to be misplaced.

[4]The determination by respondent's Appeals Office to sustain respondent's proposed levy before considering petitioner's June 23, 2010 offer-in-compromise did not negatively affect petitioner's rights.  Respondent's centralized office-in-compromise unit considered petitioner's June 23, 2010 offer-in-compromise, rejected it, and petitioner had the opportunity to, and did, appeal that rejection to respondent's Appeals Office.  Petitioner in effect continues to appeal that rejection here.

We turn first to petitioner's position regarding respondent's failure to abate interest under section 6404. The record does not establish that petitioner raised at the June 3, 2010 telephonic hearing respondent's failure to abate interest under section 6404. Consequently, we shall not consider that matter.[5] See Magana v. Commissioner, 118 T.C. 488, 493-494 (2002); Miller v. Commissioner, 115 T.C. 582, 589 n.2 (2000), aff'd, 21 Fed. Appx. 160 (4th Cir. 2001); see also sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

We turn next to petitioner's position regarding respondent's failure to abate additions to tax under section 6404. The record does not establish that petitioner raised at the June 3, 2010 telephonic hearing respondent's failure to abate additions to tax under section 6404. Consequently, we shall not consider that matter. See Magana v. Commissioner, 118 T.C. at 493-494; Miller v. Commissioner, 115 T.C.

---

[5]Assuming arguendo that petitioner's letter dated June 26, 2009, in which he requested that respondent "withdraw all penalties and interest on the tax due", and his letter dated July 29, 2009, in which he restated that request, can be viewed as a request by petitioner to abate all interest under sec. 6404 with respect to his taxable year 2008, we find that petitioner has failed to carry his burden of showing that he is entitled to any such abatement. See, e.g., Hill v. Commissioner, T.C. Memo. 2009-39; Guerrero v. Commissioner, T.C. Memo. 2006-201; Braun v. Commissioner, T.C. Memo. 2005-221. Where a taxpayer requests that all interest with respect to a deficiency be abated, the "requisite correlation between an error or delay attributable to the Commissioner and a specific period of time is * * * missing". Braun v. Commissioner, T.C. Memo. 2005-221 (citing Donovan v. Commissioner, T.C. Memo. 2000-220).

at 589 n.2; <u>see also</u> sec. 6330(d)(1); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

Based upon our examination of the entire record before us, we find that petitioner has failed to carry his burden of establishing that we should reject the determinations in the notice of determination with respect to his taxable year 2008.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.