T.C. Memo. 2016-65

UNITED STATES TAX COURT

TERRY E. HORNBACKER AND GEORGIA R. HORNBACKER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3622-13.                               Filed April 14, 2016.

Terry E. Hornbacker and Georgia R. Hornbacker, pro se.

Michael T. Shelton, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge: Respondent issued notices of final determination denying

petitioners' claim under section 6404[1] for abatement of interest on Federal income

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code, as amended and in effect at all relevant times, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

**[\*2]** tax liabilities for 2005 and 2006.  Petitioners timely petitioned the Court under section 6404(h) and Rule 280 seeking review of respondent's determination.[2]  The issue for decision is whether respondent's denial of petitioners' claim for abatement of interest was an abuse of discretion.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulated facts and facts drawn from the stipulated exhibits are incorporated herein by this reference.  Petitioners resided in Illinois when they filed their petition.

During the years in issue Mr. Hornbacker owned Public Sector Consulting, a management consulting business that performed startup analysis, problem solving, mobile computing solutions, and Internet marketing for small, independent businesses.  Mrs. Hornbacker was a violinist.  She performed with an orchestra, was a music professor, and gave private violin lessons.  Mr. Hornbacker worked from a home office, and Mrs. Hornbacker gave private violin lessons from a studio in petitioners' home.

---

[2]The notices of determination are dated August 8, 2012.  Petitioners had 180 days from the date of the notices of determination to petition the Court; the deadline was February 4, 2013.  Petitioners' petition was postmarked February 4, 2013.  See sec. 7502.

**[\*3]** I.     The Audit

The Internal Revenue Service (IRS) selected petitioners' 2005 and 2006

Federal income tax returns for audit.[3]  The IRS did not contact petitioners in

writing about the audit before November 1, 2007.  Tax Compliance Officer

Valerie Goggil (TCO Goggil) was assigned petitioners' audit.  Her case history

reports (reports) for 2005 and 2006 were entered into evidence.[4]  TCO Goggil

credibly testified that her schedule was normally "booked 30-45 days" out. This

timeframe had to be taken into account when rescheduling meetings or scheduling

additional meetings with taxpayers.

---

[3]It appears from the record that the audits of both returns occurred concurrently.  Petitioners' 2005 return is stamped "SC 17 NO. 45 AUG 15 2006 [sic] SELECTED FOR EXAM".  Petitioners' 2006 return is stamped "SC 17 NO. 50 AUG 15 2007 [sic] SELECTED FOR EXAM".  There is no explanation in the record for the one year between the selection of petitioners' returns for audit and the concurrent audits of the returns.

[4]At the top of the reports Tax Compliance Officer Sandra Theilken (TCO Theilken) is identified as the examining officer.  TCO Goggil testified that she created the reports and that when TCO Theilken opened the reports for the audit reconsideration TCO Theilken's name was automatically inserted as the examining officer.  The IRS no longer uses this procedure because on its server an audit reconsideration is opened as a new case.

**[\*4]** TCO Goggil's first meeting with petitioners was on December 12, 2007.[5]

Petitioners had a "worksheet" that they offered as substantiation for the expenses

underlying their claimed deductions but provided very little third-party

documentation of their reported expenses at that meeting. Petitioners and TCO

Goggil met again on January 22, 2008. Petitioners brought some documentation

of expenses with them to the second meeting with TCO Goggil but still did not

have much third-party documentation to substantiate their reported expenses.[6]

Petitioners and TCO Goggil met a third time on February 7, 2008. Petitioners did

not bring any additional substantiation to that meeting.

On February 11, 2008, on the basis of the third-party documentation that

petitioners had provided, TCO Goggil mailed Form 4549, Income Tax

Examination Changes, to petitioners proposing adjustments to their 2005 and 2006

returns. By letter dated March 11, 2008, petitioners responded to each of the

explanations of items from the Form 4549. By this time TCO Goggil had also

[5]The report notes for November 6 through December 17, 2007, are entered on September 8, 2008, with the note: "SOMEHOW NOTES ENTERED FROM 11/06/2007 TO 12/17/2007 WERE DELETED FROM HISTORY. OBTAINED TIME REPORT FROM SECRETARY. ADDED HERE TO HAVE TIME BALANCE."

[6]Mr. Hornbacker brought his laptop with him to the meeting because he claimed his substantiation was saved there. TCO Goggil informed him that she needed hard copies of the substantiation.

[*5] been assigned a complicated fraud case concerning another taxpayer that involved 10 years of Federal income tax returns; the case was complicated and was designated a priority.

On August 25, 2008, TCO Goggil mailed revised proposed adjustments to petitioners that took into account new documentation petitioners had provided with their March 11, 2008, letter. Petitioners did not agree with TCO Goggil's revised proposed adjustments. Therefore, on September 8, 2008, TCO Goggil closed petitioners' audit because the parties could not agree on the adjustments, and the file was sent to her manager for review.

On November 3, 2008, TCO Goggil received petitioners' file from her manager with instructions to not allow the additional expenses and to meet with petitioners to review the proposed adjustments. On November 10, 2008, TCO Goggil reviewed petitioners' file, and on November 12, 2008, she again met with petitioners. At that meeting petitioners produced more documentation to substantiate their reported expenses. Petitioners and TCO Goggil scheduled an additional meeting because Mrs. Hornbacker had to leave the November 12, 2008, meeting early to go to work.

On December 3, 2008, TCO Goggil met with petitioners for the final time. At that meeting petitioners refused to sign Form 872, Consent to Extend the Time

[*6] to Assess Tax, for the years in issue.[7] On December 4 and 18, 2008, TCO Goggil again revised her proposed adjustments and then mailed to petitioners her final proposed adjustments. After receiving the final proposed adjustments, petitioners contacted the Taxpayer Advocate Service (TAS).

On January 5, 2009, TCO Goggil received a letter from TAS, on petitioners' behalf, requesting a correction to the final revised 30-day letter because of alleged math errors. TCO Goggil did not make any corrections to her final proposed adjustments, noting in the report that any math errors were minor, that petitioners would not sign Form 872, and that she had been lenient during the audit by allowing petitioners expenses for which they had no third-party substantiation. TCO Goggil closed the audit and gave her audit file to her manager. Her manager then forwarded the audit file to Technical Services for preparation and issuance of a notice of deficiency.

On January 22, 2009, respondent mailed a notice of deficiency for 2005 and 2006 to petitioners' last known address. The notice of deficiency was issued before the expiration of the periods of limitations for both tax years in issue.

---

[7]The purpose of Form 872 is often to give the IRS more time to determine the correct tax liability before the IRS must finalize its determination or lose the ability to collect any tax. See Abumayyaleh v. Commissioner, T.C. Memo. 2010-275, slip op. at 6.

**[\*7]** Petitioners did not petition this Court on the notice of deficiency. On June 15, 2009, the IRS assessed the taxes, penalties, and interest determined in the notice of deficiency.

## II.    The Audit Reconsideration

On September 24, 2009, petitioners contacted TAS by phone. TAS mailed petitioners a letter dated September 29, 2009, memorializing that phone conversation. In the letter TAS confirmed that the IRS had mailed petitioners a notice of deficiency to their address on record and expressed regret that they "were not available to sign for the certified letter and that it was returned to the IRS by the Post Office." Petitioners responded to TAS by letter dated October 23, 2009, which states: "This corrected final report[8] was finally delivered to us around September 30th, [sic] 2009." They also included additional information to dispute the final numbers in the corrected final report.

Approximately one month after petitioners' letter to TAS, respondent proposed a collection action against petitioners. They received Notices CP 504 dated November 30, 2009, for 2005 and 2006 informing them that the IRS

---

[8]Although it is not entirely clear from the record, it appears that the "corrected final report" is the Form 4549-A, Income Tax Discrepancy Adjustments, and accompanying documentation that was included with the notice of deficiency.

[*8] intended to levy certain assets because petitioners had not paid their 2005 and 2006 Federal income tax liabilities. They then received Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, dated March 29, 2010, for 2005 and 2006. Mrs. Hornbacker acknowledged on cross-examination that petitioners received the final notice of intent to levy. Petitioners did not request a collection due process hearing, nor did they respond otherwise to any of the notices.

On April 22, 2010, TAS prepared an operations assistance request (OAR) requesting an audit reconsideration for petitioners' tax years 2005 and 2006. On April 27, 2010, a TAS-IRS liaison received the OAR, and on April 28, 2010, forwarded it to the IRS. On May 6, 2010, the IRS Planning and Special Programs office processed the OAR and forwarded it to a field examination group for audit reconsideration.

On June 3, 2010, petitioners' audit reconsideration was assigned to TCO Theilken. The case was not mailed to TCO Theilken until June 11, 2010, because she was on approved leave during the week of June 7, 2010. On July 1 and 12, 2010, TCO Theilken reviewed petitioners' audit file and agreed with the original audit results.

**[*9]** She called petitioners and informed Mr. Hornbacker of her determination, and he asked to speak with her manager. TCO Theilken's manager called Mr. Hornbacker and told Mr. Hornbacker that he agreed with TCO Theilken's determination. Respondent mailed petitioners a letter dated July 13, 2010, explaining the outcome of the audit reconsideration.

## III.   Appeals

Petitioners submitted a protest letter dated August 2, 2010, requesting an appeal of their audit reconsideration determination. Petitioners attached to the protest letter more substantiation for the expenses underlying their claimed deductions for 2005 and 2006. On August 12, 2010, TCO Theilken or her manager reviewed petitioners' protest letter, and on September 2, 2010, petitioners' audit file was forwarded to the IRS Office of Appeals in Chicago (Appeals).

Appeals mailed petitioners a letter dated November 8, 2010, which acknowledged receipt of their case on October 26, 2010, and explained what Appeals does. The letter informed petitioners that if they "wish to stop or reduce interest on part or all of the proposed balance due, you can make payments towards the tax at the address listed above." Appeals Officer Sander (AO Sander) mailed petitioners a letter dated February 15, 2011, informing them that she had been assigned to their case and explaining the Appeals process. On February 18,

[*10] 2011, petitioners faxed additional substantiation about individual retirement account distributions for 2005 and 2006.  AO Sander then mailed petitioners a letter dated March 25, 2011, scheduling a conference with them for April 26, 2011.  On March 25 and 26, 2011, petitioners faxed AO Sander Form 5498, IRA Contribution Information, and Form 1098, Mortgage Interest Statement, respectively.  The information on Form 5498 is handwritten, and the box next to "CORRECTED" is marked.

AO Sander mailed petitioners a letter dated May 31, 2011, informing petitioners that she was "allowing your claim in part" but that they had not "fully met" their burden for all of their reported expenses.  On June 9, 2011, AO Sander faxed to Mr. Hornbacker a Form 4549 that shows an overpayment of $834 for 2005.[9]  Petitioners disagreed with AO Sander's determinations, and on June 22, June 27, and July 5, 2011, faxed her additional explanations for their claimed expenses.  AO Sander mailed petitioners a letter dated July 6, 2011, "sustaining the examiner's determination and allowing an additional deduction for Schedule C

_____

[9]The first stipulation of facts signed by the parties states:  "AO Sander faxed to petitioners a copy of her revised tax computations.  A copy of the computations is attached as **Exhibit 26-J**."  Exhibit 26-J includes a Form 4549 for only 2005.

[*11] business expenses as shown on the enclosed report."[10]  Petitioners again disagreed with AO Sander's determination, and Mr. Hornbacker twice faxed her additional information on July 7, 2011.  AO Sander completed Form 5402, Appeals Transmittal and Case Memo, dated July 26, 2011, determining that petitioners were allowed additional deductions claimed on Schedule C, Profit or Loss From Business, and reducing petitioners' Federal income tax liabilities by $834 and $3,609 for 2005 and 2006, respectively.  Appeals also created a final schedule of adjustments on July 26, 2011, adjusting the original assessments reflected on Form 4549-A from $2,437 to $1,603 for 2005 and $7,218 to $3,609 for 2006.  Petitioners' section 6662 accuracy-related penalties were abated in full.

IV.    Petitioners' Offers-in-Compromise (OICs)[11]

Petitioners' filed separate Forms, 656-L, Offer in Compromise (Doubt as to Liability), for 2005 and 2006 dated October 14, 2011.  They offered $1,233 and $1,943 as compromises for their 2005 and 2006 Federal income tax liabilities, respectively, and remitted these amounts with their OICs.

---

[10]Exhibit 30-J includes only the cover letter referencing the report.

[11]Respondent objected to any evidence about petitioners' OICs being entered into evidence on the grounds of relevancy.  The Court finds that a discussion of the OICs is warranted.  Therefore, respondent's objection is overruled.

**[*12]** A.     Petitioners' 2005 OIC

Petitioners received a letter dated October 31, 2011, informing them that the IRS had closed the file on their offer for their 2005 tax liability because the IRS did not have jurisdiction to process the offer "based on the following:  We cannot consider your offer based on Doubt as to Liability, [sic] because you raise no issue regarding the accuracy of your tax liability."  The letter also informed petitioners that they would receive a refund of $1,233 in 8 to 10 weeks.  Along with the letter the IRS returned the Form 656-L with the received stamp crossed out and the word "return" stamped in capital letters at the top of the first page.

B.     Petitioners' 2006 OIC

Respondent received petitioners' 2006 OIC on October 28, 2011, which included additional documentation.  On April 2, 2012, respondent abated tax of $617 and reduced or removed late payment interest of $440.42 for 2006.  Petitioners then received a letter dated May 11, 2012, informing them that their offer for their 2006 tax liability was rejected because "[w]e have partially abated the original tax assessment.  There is no longer a basis for the Offer in Compromise."  The letter also informs petitioners of their right to appeal the rejection within 30 days of the date of the letter.  Petitioners did not appeal the rejection, nor did they submit a new OIC after the April 2, 2012, abatement of tax.

[*13] While the letter makes no mention of what was done with the check for $1,943 petitioners mailed to the IRS with their OIC for 2006, at trial respondent stated that it was standard practice for the check to be cashed when received and placed in a "4710 account"[12] so that the check would not expire and be rejected by the bank during the pendency of the OIC. The funds are treated as a deposit towards the OIC, not a payment. Petitioners did receive a U.S. Treasury check for $1,943 dated November 19, 2013. As of the time of trial petitioners had not negotiated the check.[13]

V.      Petitioners' Request for Interest Abatement

Petitioners sent the IRS Form 843, Claim for Refund and Request for Abatement, dated December 15, 2011. The Form 843 was for 2005 and requested that $1,706.59 be abated. The Form 843 instructions direct taxpayers to "prepare a separate Form 843 for each tax period". There is no Form 843 in the record for 2006, but in their explanation attached to the Form 843, petitioners state: "This request is in regard to 1040 income tax for 2005 and 2006". They also request "an abatement of all interest * * * assessed from April 15, 2006 [sic] to the present."

_____

[12]Respondent stated that a 4710 account is "essentially a clearing house account."

[13]There was no testimony about the date of the refund of the $1,233 submitted with the 2005 OIC.

[*14] Petitioners marked the box for "Interest was assessed as a result of IRS errors or delays". Petitioners also stated that there was a section 6662 accuracy-related penalty in issue and marked the box that reasonable cause can be shown for not assessing the penalty. The section of Form 843 for the "Date(s) of payment(s)" is blank. The "RECEIVED" stamp on the Form 843 is dated December 27, 2011.

Respondent mailed petitioners separate notices of determination disallowing their requests for abatement of interest for 2005 and 2006, each dated August 8, 2012.

OPINION

On Form 843, petitioners requested an abatement of interest from April 15, 2006, to "the present". In their petition, petitioners ask the Court to "waive all interest and penalties made in this case".[14] The parties stipulated that respondent did not contact petitioners in writing about the audit of their tax returns before November 1, 2007. Because the Commissioner may abate interest only for

_____

[14]"[S]ection 6404 confers no 'stand alone' jurisdiction of the Tax Court to review the Commissioner's determinations to abate penalties. See sec. 6404(h)(1)." Gray v. Commissioner, 138 T.C. 295, 300 (2012). Even if the Court had jurisdiction over the penalties here, the IRS had abated them in full in July 2011, well before the petition was filed in this case. Therefore, the Court's opinion will only address petitioners' request for an abatement of interest.

[*15] managerial and ministerial acts performed after the IRS contacts the taxpayer in writing, the Court will review only petitioners' request for interest abatement for managerial and ministerial acts performed after November 1, 2007. See sec. 6404(e)(1); sec. 301.6404-2(a)(2), Proced. & Admin. Regs.

I.     Abatement of Interest Generally

For tax years beginning after July 30, 1996, the Commissioner is permitted to abate interest on any deficiency in tax attributable, in whole or in part, to any unreasonable error or delay by an IRS officer or employee in performing a "managerial" or "ministerial" act. Woodral v. Commissioner, 112 T.C. 19, 25 (1999). An error or delay shall be taken into account only if no significant aspect of the error or delay can be attributed to the taxpayer involved and the error or delay occurs after the IRS has contacted the taxpayer in writing with respect to the deficiency or payment. Sec. 6404(e)(1).

A "managerial" act is an administrative act that occurs during the processing of a taxpayer's case and that involves the temporary or permanent loss of records or the exercise of judgment or discretion relating to personnel management. Sec. 301.6404-2(b)(1), Proced. & Admin. Regs.

A "ministerial act" is a procedural or mechanical act that does not involve the exercise of judgment or discretion and occurs during the processing of a

[*16] taxpayer's case after all the prerequisites to the act, such as conferences and review by supervisors, have taken place. See Lee v. Commissioner, 113 T.C. 145, 150 (1999); sec. 301.6404-2(b)(2), Proced. & Admin. Regs. In contrast, a decision concerning the proper application of Federal tax law or other applicable Federal or State law is not a managerial or ministerial act. Sec. 301.6404-2(b)(1) and (2), Proced. & Admin. Regs. The mere passage of time does not establish error or delay in performing a managerial or ministerial act. See Lee v. Commissioner, 113 T.C. at 150; Ibrahim v. Commissioner, T.C. Memo. 2011-215 (citing Lee v. Commissioner, 113 T.C. at 150-151). Section 6404(e) is not intended to be routinely used to avoid payment of interest; rather, Congress intended that interest be abated "where failure to abate interest would be widely perceived as grossly unfair." H.R. Rept. No. 99-426, at 844 (1985), 1986-3 C .B. (Vol. 2) 1, 844; S. Rept. No. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.

To qualify for abatement of interest under section 6404(e), the taxpayer must: (1) identify an unreasonable error or delay by the IRS in performing a ministerial or managerial act; (2) establish a correlation between the error or delay by the IRS and a specific period for which interest should be abated; and (3) show that the taxpayer would have paid his or her tax liability earlier but for such error or delay. Sec. 6404(e)(1); Ibrahim v. Commissioner, T.C. Memo. 2011-215, slip

**[\*17]** op. at 7; <u>Braun v. Commissioner</u>, T.C. Memo. 2005-221, slip op. at 9; sec. 301.6404-2, Proced. & Admin. Regs.; <u>see also</u> <u>Krugman v. Commissioner</u>, 112 T.C. 230, 238 (1999).

The Court may order an abatement when the Commissioner abused his discretion in failing to abate interest. Sec. 6404(h)(1). The taxpayer must prove that the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. <u>Lee v. Commissioner</u>, 113 T.C. at 149; <u>Woodral v. Commissioner</u>, 112 T.C. at 23.

II.  <u>Petitioners' Actions and Argument</u>

A.  <u>Statutory Requirements Petitioners Must Meet</u>

The Court will examine each of the separate requirements petitioners must meet.

1.  <u>Identify IRS Error or Delay in Performing a Managerial or Ministerial Act</u>

The regulations give several examples of managerial and ministerial errors or delays, ranging from the managerial act of not reassigning an auditor's cases after the auditor is permanently reassigned to another group to the ministerial act of transferring a file. <u>See</u> sec. 301.6404-2(c), Proced. & Admin. Regs.

[*18] Petitioners alleged no specific IRS error or delay in performing a managerial or ministerial act. Their main argument was that at multiple levels of the audit the Federal tax laws were improperly applied because by their final Appeals conference several of their claimed deductions that TCO Goggil disallowed during the initial audit were allowed. The improper application of Federal tax law during the course of petitioners' audit is not a managerial or ministerial act. See id. para. (b)(1) and (2).

Petitioners also allege that the IRS lost, and admitted it had lost, their file for at least two months during the audit. They provided no evidence to corroborate their allegation. The Court need not accept petitioners' self-serving testimony when they fail to present corroborative evidence. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). There is no documentation in any of the reports in the record of their file being lost. The only indication of any lost documentation is a note in the reports stating that some of TCO Goggil's notes had been deleted and needed to be reentered for timekeeping purposes.

In fact, the reports show adequate response times by the IRS throughout petitioners' audit. TCO Goggil's schedule was full for 30-45 days, which meant when petitioners required subsequent meetings they could not be immediately rescheduled. During petitioners' audit TCOs Goggil had also been assigned a

[*19] fraud case that took priority over her other cases. The prioritizing of work and caseloads is not a managerial or ministerial act. Bartelma v. Commissioner, T.C. Memo. 2005-64; Jacobs v. Commissioner, T.C. Memo. 2000-123. This is more akin to a general administrative decision. See sec. 301.6404-2(c), Examples (7) and (8), Proced. & Admin. Regs. TCO Theilken's and AO Sander's case file notes also show that they timely worked on and processed petitioners' file. Additionally, the fact that petitioners provided additional third-party substantiation at almost every meeting throughout the audit and audit reconsideration instead of substantiating their claimed deductions at the beginning of the audit meant that the TCOs and the AO working on petitioners' file had to continually review more documentation after almost every meeting.

2.    Establish a Correlation Between the Error or Delay by the IRS and a Specific Period for Which Interest Should Be Abated

On Form 843 petitioners requested an abatement of interest from April 15, 2006, to "the present".[15] Then in their petition they requested a waiver of "all interest and penalties made in this case." Petitioners make no correlation between any IRS errors or delays in performing managerial or ministerial acts and a specific period for which interest should be abated. This Court has held that a

---

[15]As noted supra respondent did not contact petitioners in writing about their audit before November 1, 2007.

[*20] request for an abatement of all interest is a request to be exempt from interest as opposed to an abatement of interest for a specific period. See Braun v. Commissioner, slip op. at 14; Donovan v. Commissioner, T.C. Memo. 2000-220, slip op. at 6. Congress did not intend the statute to be used "routinely to avoid payment of interest". See H.R. Rept. No. 99-426, supra at 844, 1986-3 C.B. (Vol. 2) at 844; S. Rept. No. 99-313, supra at 208, 1986-3 C.B. (Vol. 3) at 208.

3. Show That the Taxpayer Would Have Paid His or Her Tax Liability Earlier but for Such Error or Delay

Petitioners repeatedly testified that they would have paid their liability promptly if the IRS had calculated it correctly the first time. While the Court does not doubt petitioners' intentions to dutifully pay their fair share of taxes, their actions throughout the audit belie their words. At every meeting with TCO Goggil and with Appeals, petitioners continued to provide additional substantiation for their reported expenses. Had they presented all of the necessary substantiation at the first and perhaps second meetings with TCO Goggil, the audit would not have taken as long as it did. Additionally, the notice of deficiency for 2005 and 2006 was issued in a timely manner on January 22, 2009, well within the periods of limitations for both years.

**[\*21]** B.     <u>Petitioners' OICs</u>

Petitioners submitted OICs for 2005 and 2006 on October 14, 2011, for $1,233 and $1,934, respectively.  The IRS rejected both OICs.  Petitioners' 2005 OIC was rejected within three weeks on October 31, 2011, and $1,233 was refunded to them.  Petitioners' 2006 OIC was rejected on May 11, 2012, and $1,934 was refunded to them.  Petitioners argue that interest should be abated for the period from the date they filed their OICs to the date the IRS refunded the amounts they sent with the offers because respondent cashed petitioners' checks and because of the amount of time respondent took to reject the 2006 OIC.

Unless otherwise specified by the taxpayer, amounts submitted with an OIC are considered deposits.  They are not payments of the liability, which would stop the accumulation of interest on the underlying liability to the extent of the payment.  <u>Goettee v. Commissioner</u>, T.C. Memo. 2003-43 (citing <u>Rosenman v. United States</u>, 323 U.S. 658, 662 (1945), and <u>Keith v. Commissioner</u>, 35 T.C. 1130, 1136 (1961)), <u>aff'd</u>, 192 F. App'x 212 (4th Cir. 2006); sec. 301.7122-1(h), Proced. & Admin. Regs.  Petitioners did not assert that the amounts submitted with their OICs were to be applied to the liabilities if their offers were rejected.  Therefore, the amounts submitted with their OICs were deposits supporting their

[*22] offers, and respondent did not have unrestricted use of the money.  See Goettee v. Commissioner, T.C. Memo. 2003-43.

As stated supra, the mere passage of time does not create a claim for an abatement of interest.  See Lee v. Commissioner, 113 T.C. at 150.  Although the IRS rejected petitioners' 2005 OIC in a matter of days but did not reject petitioners 2006 OIC for seven months, there was no unreasonable error or delay caused by a managerial or ministerial act.  Respondent acted on the basis of additional documentation petitioners included with the 2006 OIC and abated previously assessed tax and reduced or removed late payment interest before the date he denied the 2006 OIC.  The record does not reflect that respondent deviated from standard IRS procedures in processing petitioners' OICs.  See Chakoian v. Commissioner, T.C. Memo. 2009-151 (citing Braun v. Commissioner, T.C. Memo. 2005-221).  Indeed, the IRS has up to 24 months to process an OIC.  See sec. 7122(f); Paneque v. Commissioner, T.C. Memo. 2013-48, at *30 n.30.

III.  Conclusion

Petitioners have failed to prove that any managerial or ministerial act by the IRS caused an unreasonable error or delay during the audit of their 2005 and 2006 Federal income tax returns.  They have failed to connect any error or delay to a specific period, instead requesting to be exempt from interest from the time they

[*23] filed their 2005 return until they filed Form 843, and they have failed to prove that they would have paid their tax liabilities sooner except for the IRS' error or delay. Additionally, petitioners have failed to prove that any managerial or ministerial act resulted in an unreasonable error or delay in the IRS' processing of their 2005 and 2006 OICs.

Respondent did not abuse his discretion when he denied petitioners' request for an abatement of interest for 2005 and 2006.

The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.